227 Cal.App.3d 825 (1991)
278 Cal. Rptr. 185
In re REBECCA H. et al., Persons Coming Under the Juvenile Court Law.
KERN COUNTY DEPARTMENT OF HUMAN SERVICES, Plaintiff and Respondent,
v.
CLINTON H., Objector and Appellant.
Docket Nos. F012892, F012896, F013581, F013555.
Court of Appeals of California, Fifth District.
February 14, 1991.
*830 COUNSEL
E. Katherine Dashiell, under appointment by the Court of Appeal, for Objector and Appellant.
B.C. Barmann, County Counsel, Patrick L. Enright and Marvin R. Coston, Deputy County Counsel, for Plaintiff and Respondent.
Catherine Fancher Campbell, under appointment by the Court of Appeal, for Minors.
OPINION
DIBIASO, J.
Objector Clinton H. (the father) challenges juvenile dependency orders which denied him reunification services with his minor children (Welf. & Inst. Code[1] § 361.5) and terminated his parental rights (§ 366.26). The critical issues are the meaning of, and the relationship among, subdivisions (a), (b)(2) and (c) of section 361.5, and whether the father was entitled to reunification services as a matter of law.
We hold that a juvenile court may not deprive a parent of reunification services under these portions of section 361.5 unless, based on the opinions of two qualified mental health experts, it finds: (i) the parent suffers from a mental disability as described in Civil Code section 232, subdivision (a)(6), and (ii) as a result of the mental disability, the parent is either incapable of utilizing reunification services at all or is unlikely to be capable of learning from reunification services to adequately care for the child within 12 months. We also conclude a denial of all reunification services is not reviewable by appeal from the dispositional order.
Rebecca H. (born Mar. 9, 1989) and Clinton H., Jr., (born Jan. 12, 1988) were adjudged, in separate proceedings, dependent children of the juvenile court in July 1989. Both had been in out-of-home placement since mid-June. At the consolidated jurisdictional hearing, the court found as to Rebecca H.:
"Within the provision of Section 300A, [sic] said minor has suffered, or there is a substantial risk that the minor will suffer, serious physical harm *831 inflicted nonaccidentally upon the minor by the minor's parent or guardian; IN THAT:
"Said minor was placed into protective care by the Bakersfield Police Department after being found in an emaciated condition requiring immediate hospitalization with a diagnosis of malnutrition; further, said minor's weight upon admission to Kern Medical Center June 14, 1989 was one pound less than the minor's birth weight.
".... .... .... .... ....
"Within the provision of Section 300B, [sic] (in pertinent part), said minor has suffered, or there is a substantial risk that the minor will suffer, serious physical harm or illness... by the willful or negligent failure of the parent or guardian to provide the minor with adequate food, clothing, shelter, or medical treatment; IN THAT:
"... When placed in protective care, said minor's food supply was identified as a bottle of soured milk.
".... .... .... .... ....
"... Said minor was found to be residing in a dirty, cluttered, unsanitary home that was a threat to said minor's safety.
"... Said minor's home lacked an adequate supply of clean clothing for said minor."
It also found as to Clinton H., Jr.:
"Within the provision of Section 300B, [sic] (in pertinent part), said minor has suffered, or there is a substantial risk that the minor will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the minor; IN THAT:
"... Said minor was placed into protective care by the Bakersfield Police Department after he was found residing in a home environment that was dirty, cluttered, unsanitary and a threat to minor's safety.
"... Within the provision of Section 300J, [sic] said minor's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the minor will be abused or neglected, as defined in those subdivisions; IN THAT:
*832 "... Said minor's three-month-old sibling was admitted to Kern Medical Center June 14, 1989 with a diagnosis of malnutrition as said minor's sibling weighed one pound less than her birth weight."
On the date originally scheduled for disposition, the juvenile court appointed two psychologists to evaluate and report on both parents. After the psychologists submitted their reports, the juvenile court conducted the disposition hearing. At the conclusion of the hearing, the judge continued the out-of-home placement order for the minors. He also found:
"[B]y clear and convincing evidence that the minors come within the provisions of Section 361.5 of the Welfare and Institutions Code, subdivision (b)(2), in that each of the parents suffer from a mental disability, as described in Section 232 of the Civil Code, rendering each incapable of utilizing services, and I find competent evidence from mental health professionals establishing that even with such services, said parents and each of them are unlikely to be capable of caring for each of the minors within twelve months."
Accordingly, the court entered dispositional orders which denied reunification services for either parent and set, pursuant to section 361.5, subdivision (f), section 366.26 permanency planning/implementation hearings for a future date certain. The father filed notices of appeal from these disposition orders.
Subsequently, in a consolidated hearing pursuant to section 366.26, the juvenile court found, by clear and convincing evidence, the children were adoptable and the curtailment of parental rights would not be detrimental to them. The court accordingly terminated the parents' rights. The father again filed notices of appeal.
After oral argument on the appeals from the disposition orders, we requested supplemental briefing from the parties to address whether section 366.26, subdivision (k), foreclosed review of the denial of reunification by way of appeal from the disposition orders. At the same time, we consolidated the appeals from the termination orders with the appeals from the dispositional orders and set all of them for oral argument.
Having now submitted the consolidated cases for decision, we will consider the questions raised by the appeals from the disposition orders first. As a result of our rulings on these issues, we will overturn the dispositional orders and vacate the termination orders.

*833 FACTS[2]
Before the birth of Clinton H., Jr., the mother had had nine children, fathered by men other than Clinton H. All of the children had previously been removed from her custody and at least eight had been freed for adoption. Earlier psychological evaluations of the mother, in 1982, 1984, and 1985, revealed she had an IQ of 64, within the mild range of mental retardation. The consensus of the opinions expressed in the reports was that due to her limited cognitive functioning, the mother was unable to care for herself, much less for her children.
At the time Rebecca H. and Clinton H., Jr., were placed in custody, the father worked 10-hour shifts, 5 days a week, in the oil fields. He left for work each day before sunrise.
According to the father, the baby had a difficult time digesting formula. He believed his wife had problems keeping the apartment clean. They sometimes argued about her housekeeping. He saw the problem as: "... I get home and I am tired and I think my wife is a little lazy and sometimes we just let things go."
Prior to his employment in the oil fields, the father had experienced long periods of unemployment and had relied on general assistance for financial support. Despite the juvenile court's jurisdictional findings, he claimed there was nothing wrong with his home situation. He felt law enforcement had no right to intervene in his family life and remove his children. According to a social worker, the father threatened to kill someone and leave the state, "if he did not have [his son] returned to him at the next Court hearing [the originally scheduled disposition hearing]."
The social worker assigned to this case recommended the father be psychologically evaluated because, in her opinion, he did not understand the seriousness of his children's condition and believed the juvenile court action was inappropriate. She acknowledged she was unaware of any indication in his history of any mental illness.
According to the father, he never threatened to kill anyone if the children were not returned to him. He denied having seen a psychiatrist or psychologist during the previous four or five years. He testified he had never had a nervous breakdown, suffered mental problems requiring hospitalization, or taken medication for any condition such as anxiety or nervousness.
*834 Court-appointed psychologists Jay Fisher and Dean Haddock each prepared a written report evaluating the father.[3] The social worker attached copies of the reports to her "supplemental dispositional report" to the court. In addition, the father called Haddock as a witness at the disposition hearing.
Fisher diagnosed the father as suffering from a "[n]arcissistic personality disorder." According to the psychologist, the father exaggerated his capabilities. Latent guilt that he could never do enough and fear of failure fueled his overconfident attitude.
"Overall, Mr. [H.] denys [sic] large segments of reality. His denial takes the form of extreme minimization. This minimization has occurred in response to his wife's very basic limitations and the effect of her limitations on the children. This minimization has also affected Mr. [H.'s] perception of the dangerousness of Rebecca's malnutrition.
"Mr. [H.] constitutes a danger to his children. Mr. [H.'s] psychological dynamics preclude his ability to understand even the basic survival needs of the infant child and toddler for whom he and his wife are responsible. His self-absorption is so pervasive, he is unable to understand the very chronic limitations and disabilities of his wife [R.]"
Fisher concluded the father:
"is clearly a danger to others given his Narcissistic personality disorder and the specific dynamics of his self-absorption and inability to perceive the actual basic needs of his infant children...."
By contrast, Haddock diagnosed the father as:
"... paranoid and antisocial. In response to stress and threats to the ego, the client's primary defense mechanisms include denial, projection, and avoidance. Insight into his own psychological functioning and adjustment appears to be fair. Judgment with regard to decisions affecting his own well-being is fair. There are no indications that the client is not competent to manage his own affairs.
"The prognosis for change with appropriate treatment is considered to be fair. The client appears to be highly motivated to become involved in treatment. Current barriers to the treatment endeavor include work schedule *835 problems, spouse resistance, transportation difficulties, and financial obstacles. The recommended treatment is Parent Effectiveness Training. Treatment plans should take into account the possibility of disruption due to alcohol abuse, antisocial behavior, and threats of early termination."
Haddock testified the father did not have any mental incapacity or disorder which rendered him unable to adequately care for or control his children nor did he have a mental disability which would render him incapable of utilizing the services of a reunification plan. Further, he believed the father could benefit from reunification services and was competent to "learn the things that are required of a person in reunification, were he to be afforded that counseling and that training." However, Haddock also believed it was unlikely the father could learn or be able, in the next 12 months, to adequately provide and care for the children. To succeed, it "would mean [the father] not being able to work as much as he has been working ... [a]nd his abstinence from excessive use of alcohol."

DISCUSSION

I. REVIEW OF DISPOSITION ORDERS
According to section 366.26, subdivision (k), an order for a hearing pursuant to the section is not appealable but may be subject to writ review. The juvenile court, at the disposition hearing, denied both parents reunification services and calendared a section 366.26 hearing. Consequently, as noted earlier, we directed the parties to address the applicability of section 366.26, subdivision (k), to the instant appeals from the juvenile court's disposition orders. We have found no relevant cases.
(1) The father contends subdivision (k) does not apply to a denial of reunification services under section 361.5, subdivision (b). He cites the general rule favoring the appealability of disposition orders. (§§ 395, 360.) He also cites treatise commentary espousing the liberal construction of statutes which permit appeals. (See 3A Sands, Sutherland Statutory Construction (4th ed. 1986) § 67.08, p. 371.) However, he overlooks another rule of statutory interpretation, one which we find controlling: a specific provision relating to a particular subject will govern a general provision, even if the general provision standing alone is broad enough to include the subject to which the specific provision relates. (People v. Tanner (1979) 24 Cal.3d 514, 521 [156 Cal. Rptr. 450, 596 P.2d 328].)
Ordinarily, at disposition the juvenile court will frame a reunification plan (see Discussion II A, post), with services potentially available for up to 18 months. (See §§ 361.5, subd. (a) & 366.21.) By contrast, if the juvenile *836 court refuses to order any reunification services, its dispositional order must include a provision which sets, within 120 days, a section 366.26 permanency planning/implementation hearing or a section 366.25 permanency planning hearing.[4] (§ 361.5, subd. (f).) An aggrieved party may be able to obtain timely appellate review of a disposition order which includes a reunification plan. However, where the juvenile court has denied all reunification, a parent, such as the father in this case, does not as a practical matter have enough time to secure relief by way of a direct appeal before a hearing under section 366.26 is held.
Because the juvenile court must promptly conduct a permanency planning hearing when it rejects reunification entirely (§ 361.5, subd. (f)),[5] a challenge to the complete denial of reunification "constitutes a direct attack" on a provision in the disposition order which sets a section 366.26 hearing. (See In re Kristin W. (1990) 222 Cal. App.3d 234, 246 [271 Cal. Rptr. 629]; see also In re Eli F. (1989) 212 Cal. App.3d 228, 236 [260 Cal. Rptr. 453].) Consequently, the propriety of the juvenile court's refusal to grant reunification is not reviewable by appeal from the dispositional order (§ 366.26, subd. (k)).
In our view, section 366.26, subdivision (k) carves out an unambiguous and well-conceived exception to the general application of section 395 to disposition orders. Subdivision (k) is a testament to the Legislature's concern for stability in the lives of dependent minors. (See Sen. Select Com. Rep. on Children & Youth, Sen. Bill No. 1195, p. 10 (1988 Reg. Session).) When a juvenile court has decided against reunification altogether, an expeditious method must exist by which a parent may obtain review of the ruling before the court orders the termination of parental rights. The Legislature provided such a means by enacting section 366.26, subdivision (k). In so doing, it has created a scheme sensitive to both the goal of reunification where feasible and the recognition of the importance of providing "stable, permanent homes" (§ 366.26) for minor children whose parents are unable to care for them. The filing of a timely petition for an extraordinary writ permits appellate review of the denial of reunification prior to the date the section 366.26 hearing is held. Should the reviewing court conclude reunification services were improperly refused, seasonable extraordinary relief could be granted.
*837 The procedural history of this case provides ample confirmation of the wisdom of this legislation. The juvenile court conducted the disposition hearing in October 1989. Had writ review been sought of the dispositional order, relief could have been obtained before the section 366.26 hearing was held in February 1990. However, the matter was pursued by appeal rather than writ. The section 366.26 permanency planning hearing went forward. Appellant's parental rights were terminated in part on the assumption reunification services had been properly refused, and another appeal was filed. Rather than serving the object of expeditious review of the juvenile court's denial of reunification services, pursuit of the issue via appeal from the disposition order has delayed its resolution until early 1991.
Given our conclusion the denial of reunification under section 361.5 is not reviewable by appeal from the dispositional order, the parties ask this court to treat the appeal as a petition for an extraordinary writ. (In re Albert B. (1989) 215 Cal. App.3d 361, 372-373 [263 Cal. Rptr. 694].) We will do so.

II. DENIAL OF REUNIFICATION SERVICES

A. Introduction

Reunification services are crucial when a child is removed from the home. (In re Jamie M. (1982) 134 Cal. App.3d 530, 545 [184 Cal. Rptr. 778].) Section 361.5, subdivision (a), directs the juvenile court to order the probation officer to provide child welfare services to the minor and the minor's parents or guardians for the purpose of facilitating reunification of the family whenever a minor is removed from the custody of a parent or guardian.[6] The reunification program selected must be designed to eliminate those conditions which led to the juvenile court's jurisdictional finding. (§ 362, subd. (c).)
Nevertheless, as the Legislature has recognized, it may be fruitless to provide reunification services under certain circumstances. (§ 361.5, subd. (b).) In pertinent part, subdivisions (b)(2) and (c) of section 361.5 read:
"(b) Reunification services need not be provided to a parent described in this subdivision when the court finds, by clear and convincing evidence ...:
*838 ".... .... .... .... ....
"(2) That the parent is suffering from a mental disability that is described in Section 232 of the Civil Code and that renders him or her incapable of utilizing those services.
".... .... .... .... ....
"(c) In deciding whether to order reunification in any case in which this section applies, the court shall hold a dispositional hearing. The probation officer shall prepare a report which discusses whether reunification services shall be provided. When it is alleged, pursuant to paragraph (2) of subdivision (b), that the parent is incapable of utilizing services due to mental disability, the court shall order reunification services unless competent evidence from mental health professionals establishes that, even with the provision of services, the parent is unlikely to be capable of adequately caring for the child within 12 months."
If a court makes the requisite findings to deny reunification, it then "fast-tracks" the minor to permanency planning under section 366.25 or permanency planning and implementation under section 366.26. (§ 361.5, subd. (f).)
The Legislature has not made entirely clear the relationship among subdivisions (a), (b)(2) and (c) of section 361.5, or the procedural and evidentiary protocol to be followed by the juvenile court when applying them in circumstances such as those now before us. We address some of these issues, apparently for the first time.

B. Expert opinion

(2) In interpreting section 361.5, subdivision (b)(2), the juvenile court determined the provision required that a finding of mental disability be supported by the opinions of at least two experts, each of whom meets the professional qualifications described in Civil Code section 232, subdivision (a)(6). As a consequence, it appointed two evidently qualified experts. It ultimately found the views of both supported a denial of reunification services for the father. The parties do not take issue with the juvenile court's determination that the concurrence of two section 232 experts was required. We use this opportunity to record our agreement with the juvenile court's conclusion on the point.
Section 361.5, subdivision (b)(2) expressly refers to Civil Code section 232. In part, Civil Code section 232 permits the termination of parental rights when the parent(s) are mentally disabled.
*839 "`[M]entally disabled' means that a parent or parents suffer any mental incapacity or disorder which renders the parent or parents unable to adequately care for and control the child. The evidence of any two experts, each of whom shall be either a physician and surgeon, certified by the American Board of Psychiatry and Neurology or under Section 6750 of the Welfare and Institutions Code, or a licensed psychologist who has a doctoral degree in psychology and at least five years of postgraduate experience in the diagnosis and treatment of emotional and mental disorders, shall be required to support a finding under this subdivision." (Civ. Code § 232, subd. (a)(6).)
The juvenile court properly engrafted the requirements of this portion of Civil Code section 232, subdivision (a)(6), onto section 361.5, subdivision (b)(2). Before reunification may be denied under section 361.5, subdivision (b)(2), the court must find the parent suffers from a mental disability which "is described in Section 232 of the Civil Code" (italics added), not a mental disability which is defined in Civil Code section 232. This choice of words arguably reflects a legislative intent to apply the evidentiary demands of section 232, subdivision (a)(6), to determinations of mental disability under section 361.5, subdivision (b)(2).
In addition, denial of reunification under section 361.5, subdivision (b)(2) will lead to termination of parental rights under section 366.26, subdivision (c)(1), unless one of the limited circumstances described in section 366.26, subdivisions (c)(1)(A) through (c)(1)(D), exists. In view of this potentially far-reaching and traumatic consequence of a section 361.5, subdivision (b)(2) finding, it is not unreasonable to require that judicial decisions about the mental status of parents be based upon the evaluations of more than one professional who has attained an advanced level of training and experience.
The fact that Civil Code section 232 will not apply to any subsequent termination proceeding in this case[7] is of no effect. Section 366.26 does not define "mental disability," but nonetheless allows a section 361.5, subdivision (b)(2) determination to serve as a ground for termination. In addition, Civil Code section 232 has not been repealed, and yet has vitality with respect to termination proceedings involving minors who became wards before January 1, 1989. We perceive no reason why the concept of "mental disability" should not mean the same under both section 366.26 and Civil Code section 232. The relevant statutes betray no legislative desire that there be any such distinction.
The father and the minors also contend the juvenile court erred when it directed the father to submit to two psychological examinations. They *840 concede a single evaluation was justified in order to enable the court to understand the father's motivation and secure some preliminary guidance on the question of whether reunification services must be provided. However, they complain the trial court should not have ordered two examinations because there was no evidence before the court prior to entry of the order that appellant was mentally disabled.
We believe the juvenile court acted properly in ordering two evaluations of the father. The mother's history of mental illness, not to mention a lengthy history with the juvenile system, would not appear to be a sufficient basis for the court's order as to the father. However, there were deplorable living conditions in terms of sanitation, a severely malnourished infant, and a father who perceived no significant problems in his home and family life. The possibility of a mental disability within the broad definition of section 232, subdivision (a)(6), was not beyond the realm of reason under these circumstances.
The father and the minors are concerned about a parent's privacy, because mental health examinations are "highly personal," although they concede one evaluation is permissible. We fail to see any difference between one evaluation or two evaluations. How are the father's privacy rights jeopardized by an order for two evaluations, but not by an order for a single evaluation?
The father and the minors also express the concern that two examinations may result in a severance of the parent-child relationship. Yet, this may be the ultimate outcome in any event. It would appear the more information available to the court, the better to guard against erroneous dispositions.
Finally, the father and the minors suggest that requests for psychological evaluations may be misused by the county to avoid paying the high costs of reunifications. On this record, the idea is pure speculation, as is the additional skepticism about the neutrality of mental health experts whose bills are paid for by the county.
It would be unreasonable to forbid entry of an evaluation order unless the parent possessed a documented history of mental health difficulties or treatment. A parent might well have a problem of the kind contemplated by the section without any prior discovery or diagnosis. (3) Where, as in this case, the jurisdictional finding is not based on a parent's mental disability, the juvenile court may rightly look to the circumstances underlying the dependency and the evidence of the parent's conduct in deciding whether to order one or more mental health evaluations.
*841 In doing so, the juvenile court will be guided by its best judgment under all the circumstances. In some situations, the court may wish to stagger the evaluations, ordering one initially and reserving for later decision whether another is required. In other circumstances, the court may decide to call upon two qualified experts at the outset.

C. Substantial Evidence

The juvenile court premised the denial of reunification services on two findings: (1) each parent suffered from a Civil Code section 232 mental disability, rendering them incapable of utilizing services; and (2) even with services, each parent was incapable of learning to care for the minors within 12 months. The father and the minors challenge the adequacy of the evidence to support these findings as to the father. The department contends the record provides sufficient support for the court's conclusions.

1. Section 361.5, subdivision (b)(2)

(4) We agree there was insufficient evidence to support the court's finding under section 361.5, subdivision (b)(2). Two qualified experts did not testify the father suffered from a "mental disability" within the purview of the subdivision which rendered him unable to adequately care for and control the child and incapable of utilizing reunification services.
Fisher did not directly address the issues before the juvenile court under subdivision (b)(2). Indeed, he was apparently confused as to his assignment. Instead of directing his evaluation to the requirements of section 361.5, subdivisions (b)(2) and (c), Fisher wrote his report with a recommendation of termination of parental rights in mind. The father assumes, however, as do we, that the court could legitimately have interpreted Fisher's report as a diagnosis of mental disability within the subdivision (b)(2) definition.
On the other hand, there is no support in the report or the testimony of the other qualified expert, Haddock, which justifies a conclusion the father suffered from a subdivision (b)(2) mental disability. In fact, Haddock specifically testified the father did not have any mental incapacity or disorder which rendered him unable to adequately care for or control his children. Neither did the father have a mental disability which would render him incapable of utilizing a reunification plan. Further, Haddock believed the father was competent to "learn the things that are required of a person in reunification, were he to be afforded that counseling and that training" and could benefit from reunification services.
The department relies on Haddock's professional evaluation of the father as paranoid and antisocial. However, Haddock declined to say these *842 characteristics amounted to a mental disability which rendered the father unable to adequately care for and control the children or incapable of utilizing reunification services. Instead, Haddock expressly disclaimed that the father suffered from any mental disability within the scope of section 361.5, subdivision (b)(2).
We do not believe anything in In re Christina A. (1989) 213 Cal. App.3d 1073, 1080 [261 Cal. Rptr. 903], is to the contrary. Nothing contained in Haddock's report or testimony constituted an assessment of the father as serious or far-reaching as that of the parent involved in In re Christina A., supra, at pages 1080-1081.

2. Section 361.5, subdivision (c)

(5a) Because there was insufficient evidence he suffered from a mental disability, the father contends the juvenile court could not deprive him of reunification services. According to the father, if a parent does not suffer from a mental disability as described in section 361.5, subdivision (b)(2), the juvenile court may not refuse reunification under either subdivision (b)(2) or subdivision (c) of section 361.5.
The department disagrees, and maintains that section 361.5, subdivision (c) affords the court an alternate, independent ground upon which to deny reunification. In relevant part, subdivision (c) requires the court to furnish services when "it is alleged" the parent suffers from a section 361.5, subdivision (b)(2) disability, "unless competent evidence from mental health professionals establishes that, even with the provision of services, the parent is unlikely to be capable of adequately caring for the child within 12 months."
The department apparently argues for a literal interpretation of subdivision (c). In its estimation, if an agency in its petition alleges a section 361.5, subdivision (b)(2) mental deficiency, it may simply prove, by the testimony of "mental health professionals," that the parent would not be able to learn to care for the child within 12 months, for some reason determined by the expert but not necessarily one which rises to the level of a "mental disability" under section 361.5, subdivision (b)(2). Consistent with this view, the department seems to say that section 361.5, subdivision (c) was satisfied in the present case because both psychologists expressed a low estimation of the parents' chances for successful reunification even if services were ordered. Indeed, Haddock believed it unlikely that the father, due to his work habits and alcohol consumption, could learn to provide for the children in the next 12 months.
We conclude the relevant portion of section 361.5, subdivision (c) does not supply an alternative basis for refusing reunification services wholly *843 independent of the conditions of section 361.5, subdivision (b)(2). Instead, for the reasons which follow, we will subordinate subdivision (c), and apply it, by reference, to subdivision (b)(2). In so doing we will reconcile the two subdivisions with each other and with subdivision (a). (Moyer v. Workmen's Comp. Appeals Bd. (1973) 10 Cal.3d 222, 230 [110 Cal. Rptr. 144, 514 P.2d 1224].)[8]
(6) Subdivision (a)'s explicit direction to furnish reunification services when the minor is removed from the parent's custody implements the law's strong preference for maintaining the family relationship if at all possible. (See In re Carmeleta B. (1978) 21 Cal.3d 482, 489 [146 Cal. Rptr. 623, 579 P.2d 514].) The exceptions to this rule, listed in subdivision (b), are limited in number, narrow in scope, and subject to proof by the enhanced "clear and convincing" standard. A reading of subdivisions (c) through (g) of section 361.5 discloses that none stand alone. Instead, they each supplement in some manner subdivisions (a) and (b). (5b) Moreover, subdivision (a) identifies only subdivision (b) as creating exceptions to the county's duty to furnish reunification services. Thus, we believe subdivision (c) must be read in conjunction with, not apart from, subdivision (b).
(7) We adopt the following stepped inquiry as the method by which to apply subdivisions (b)(2) and (c) of section 361.5:
(1) Does the parent suffer from a mental disability as described in Civil Code section 232, subdivision (a)(6)?
(2) If so, does such disability render the parent incapable of utilizing reunification services? If the answer to this question is yes, reunification may be denied under section 361.5, subdivision (b)(2).
(3) However, if such disability does not render the parent incapable of utilizing reunification services, does it nevertheless make it unlikely the parent will be capable of learning from reunification services to adequately care for the child within 12 months? If the answer to this question is yes, reunification may be denied under section 361.5, subdivision (c).
This analytical matrix follows from the words of the two subdivisions. The incapacity referred to in subdivision (b)(2) is the incapacity to learn from reunification at all. On the other hand, the incapacity referred to in subdivision (c) is not the inability to learn from reunification but rather the inability to learn within 12 months. A parent may conceivably have a mental incapacity or disorder which would not prevent him or her from *844 utilizing reunification services to learn to adequately care for and control the child, but which would nonetheless prevent him or her from learning how to do so within 12 months. If so, a juvenile court could properly refuse reunification under subdivision (c) even though it could not deny services under subdivision (b)(2).
(8) We see a clear and important relationship between the 12-month period referred to in section 361.5, subdivision (c) and the 12-month period established by section 361.5, subdivision (a) during which services must be provided.[9] A minor must secure long-term stable placement as soon as possible, consistent with the rights of the parents. (Cf. In re Jamie M., supra, 134 Cal. App.3d at p. 541.) The 12-month limit for reunification services in subdivision (a) represents the Legislature's effort to accommodate both concerns. (In re Christina A., supra, 213 Cal. App.3d at p. 1080.) It is complemented by the 12-month period mentioned in subdivision (c). If reunification services have not been beneficial, the 12-month provision in subdivision (a) operates to sacrifice further reunification to the child's interests in a stable future placement. Similarly, if the evidence demonstrates a parent will be unable, because of mental disability, to benefit from the full 12 months of services, the child's interest in securing permanent placement receives preference over the disabled parent. (Ibid.)
We emphasize that a parent's section 361.5, subdivision (c) inability to learn from services within 12 months must arise from a "mental disability," as the term is defined in Civil Code section 232, subdivision (a)(6) and incorporated into section 361.5, subdivision (b)(2). Admittedly, subdivision (c) does not expressly say as much. However, as we have said, subdivision (c) must be construed by reference to, not separate from, section 361.5, subdivision (b)(2), and in the context of the particular statutory framework as a whole. (Moyer, supra, 10 Cal.3d at p. 230.) (5c) Under our reasoning, the court may not deny reunification under subdivision (c) on the basis of a parent's lifestyle.
In addition, we believe a decision to deny reunification under section 361.5, subdivision (c) must rest upon the same witness base as a decision to deny reunification under section 361.5, subdivision (b)(2)  the testimony of two witnesses who meet the qualifications described in Civil Code section 232, subdivision (a)(6). The phrase "mental health professionals" is not defined in section 361.5 or elsewhere that we can find. However, a finding under either subdivision (b)(2) or (c) which results in a denial of reunification is a significant and perhaps first step to the termination of *845 parental rights. (§ 366.26, subd. (c)(1); Civ. Code, § 232, subd. (a)(8).) It is reasonable to require such a portentous determination be supported in each instance by the opinions of highly qualified professionals. The mention of "competent" evidence in the subdivision gives some added force to this conclusion.
As to numbers, since section 361.5, subdivision (c) uses the plural form in referring to "mental health professionals," a clear legislative intent to require more than one expert opinion is apparent. Because the Legislature selected "two" as the appropriate number of experts for purposes of section 361.5, subdivision (b)(2), consistency would seem to warrant the selection of the same number for purposes of section 361.5, subdivision (c).
Turning to the facts of this case, Haddock expressly found petitioner did not have a mental disability as defined in subdivision (b)(2) of section 361.5. Instead, Haddock based his prediction that reunification services would not be profitable on the father's alcohol consumption and work habits. Consonant with the principles articulated above, Haddock's conclusions did not warrant the denial of reunification under subdivision (c) of section 361.5. The father should not have been deprived of the opportunity to attempt to reunify with his children by altering his lifestyle.
We add one final observation on this topic. Subdivision (f) of section 361.5 requires the court at disposition to set a permanency planning hearing if the court denies reunification "pursuant to paragraph (2), (3), (4), or (5) of subdivision (b)" of section 361.5. (9) Obviously, this list does not include denial of reunification under subdivision (c) of section 361.5. Does this mean the court need not calendar a permanency planning hearing if it refuses reunification under subdivision (c)?
In our view, it does not. As noted above, subdivisions (c) through (g) of section 361.5 supplement subdivisions (a) and (b). Because, as we have held, subdivision (c) must be interpreted and applied in light of the requirements of subdivision (b), any denial of reunification due to mental disability effectively constitutes a denial under the provisions of subdivision (b)(2). Therefore, if the juvenile court rejects reunification on the ground the parent, by reason of a mental disability, is unlikely to be capable of adequately caring for the child within 12 months (§ 361.5, subd. (c)), it must comply with the command of subdivision (f) of section 361.5.

III. APPEAL FROM TERMINATION ORDERS
(10) These consolidated proceedings include appeals from the juvenile court's section 366.26 orders terminating parental rights. Having *846 determined the underlying dispositional orders were erroneous, we must vacate the termination orders. All other issues raised by the appeals from the termination orders are moot.

DISPOSITION
Let peremptory writs issue directing the juvenile court to: (1) vacate its dispositional orders as to the father; and (2) afford him the opportunity to reunify with his children. In the exercise of its discretion, the juvenile court shall, at a new disposition hearing, determine the nature and type of reunification services to be extended to the father.
The section 366.26 termination orders are vacated.
Best, P.J., and Ardaiz, J., concurred.
NOTES
[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2] The father does not challenge the jurisdictional findings.
[3] Because no dispute has been raised about the juvenile court's denial of reunification services for the mother, the following summary is limited to the evidence relating to the father.
[4] Since the minors here were adjudged dependent children after January 1, 1989, a hearing under section 366.26 was properly ordered by the juvenile court. (§ 366.26, subd. (a).)
[5] At the time the disposition hearing in this case was held, section 361.5, subdivision (f), provided as follows:

"If a court, pursuant to paragraph (2), (3), (4), or (5) of subdivision (b), does not order reunification services, it shall conduct a hearing pursuant to Section 366.25 or 366.26 within 120 days of the dispositional hearing."
[6] Section 361.5, subdivision (a) provides:

"(a) Except as provided in subdivision (b), whenever a minor is removed from a parent's or guardian's custody, the juvenile court shall order the probation officer to provide child welfare services to the minor and the minor's parents or guardians for the purpose of facilitating reunification of the family within a maximum time period not to exceed 12 months...."
[7] As noted earlier, the minors were adjudged dependent children after January 1, 1989. (See § 366.26, subd. (a).)
[8] The legislative history of section 361.5 is of no help in resolving the issues before us.
[9] The court has the power to extend the services another six months, if appropriate. (§ 361.5, subd. (a).)