[No. A051442. First Dist., Div. Five. May 31, 1991.]

In re CATHERINE S. et al., Persons Coming Under the Juvenile Court Law.
HUMBOLDT COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v.
PAUL S., Defendant and Appellant.

**COUNSEL**

Charles Bush, under appointment by the Court of Appeals, for Defendant and Appellant.

James P. Lough, County Counsel, and Stephen R. Nielson, Assistant County Counsel, for Plaintiff and Respondent.

**OPINION**

**KING, J.**—In this case we hold that a juvenile dependency order denying reunification services based on the father's status as a pedophile was

unsupported by the statutorily required testimony of two experts, since one of the testifying psychologists was unlicensed.

In 1983, Paul S. was convicted of molesting children between the ages of five and seven over a period of about three years. The victims included his daughter Catherine, his son Steven, and a niece. The molestations involved some sodomizing. Paul served nearly five years in prison and was paroled in 1988.

Catherine was adjudged a dependent child in 1983. Steven and a third child, Lori, were adjudged dependent children in 1987. A dispositional hearing in 1990 addressed the issue whether Paul should be provided with reunification services.

Reunification services need not be provided when the court finds, by clear and convincing evidence, that "the parent is suffering from a mental disability that is described in Section 232 of the Civil Code and that renders him or her incapable of utilizing those services." (Welf. & Inst. Code, § 361.5, subd. (b)(2).) Subdivision (a)(6) of Civil Code section 232 defines "mental disability" as "any mental incapacity or disorder which renders the parent or parents unable to adequately care for and control the child." This subdivision of section 232 requires evidence from any two experts—either a physician, a surgeon, or a "licensed psychologist"—to support a finding of mental disability. (In contrast, subdivision (c) of Welfare and Institutions Code section 361.5 merely requires "competent evidence from mental health professionals" to establish that the mental disability renders the parent unlikely to be capable of adequately caring for the child within 12 months.)

At the dispositional hearing, the Humboldt County Department of Social Services presented testimony by two psychologists, Phillip Coptich and James Granger, that Paul suffered from the mental disability of pedophilia. Dr. Coptich had evaluated Paul solely for the purpose of determining the appropriateness of reunification. Dr. Granger had treated Paul on a monthly basis for nearly two years as an employee of the Department of Corrections Parole Outpatient Clinic. Both psychologists testified that Paul was a pedophile. Dr. Coptich's diagnosis was based on the offenses of which Paul was convicted and the fact Paul had admitted to him having had sex with children. Dr. Granger's diagnosis was based on his sessions with Paul and prior diagnoses of pedophilia by two psychiatrists.

Dr. Coptich testified that Paul would require intensive psychotherapy for at least a year before visitation with his children might be appropriate, and "the odds are it would be detrimental for eternity." Dr. Granger testified that Paul "is not able to be a fit parent at this time." In a previous letter to child

welfare services, Dr. Granger stated, "I do not believe this person should ever be involved, without the strictest of supervision, with minor children, his own or anyone else's, for the rest of his natural life."

Dr. Coptich is a licensed psychologist. Dr. Granger is not. In his capacity as a psychologist employed by a state agency which is not primarily involved in the provision of direct health or mental health services, Dr. Granger is exempt from state licensing requirements. (Bus. & Prof. Code, § 2909, subd. (c); 66 Ops.Cal.Atty.Gen. 371 (1983).) At the dispositional hearing, Paul's counsel pointed out to the court that the department of social services had failed to present evidence by two "licensed psychologists" within the meaning of Civil Code section 232.

The court nevertheless issued an order denying reunification services and scheduling a permanency planning hearing. Paul purports to appeal from the portion of the order denying reunification.

■ The threshold issue is whether the portion of the order denying reunification services is reviewable on appeal. It is not.

An order scheduling a permanency planning hearing is nonappealable but may be subject to immediate writ review. (Welf. & Inst. Code, § 366.26, subd. (k).) The court in *In re Rebecca H.* (1991) 227 Cal.App.3d 825, 835-837 [278 Cal.Rptr. 185], correctly held that this statutory rule encompasses an order denying reunification services. When reunification services are denied, the court's order must include a provision scheduling a permanency planning hearing. (Welf. & Inst. Code, § 361.5, subd. (f).) Consequently, a challenge to the denial of reunification services constitutes a direct attack on the statutorily nonappealable scheduling order. To permit an appeal would do violence to the statutory mandate. (227 Cal.App.3d at p. 836.) Moreover, review by appeal is an inadequate remedy when reunification services are denied, since the parent will not have enough time to secure relief before the permanency planning hearing is held. A petition for an extraordinary writ is the appropriate method for obtaining expeditious review. (*Ibid.*)

Nevertheless, we may review the denial of reunification services by treating this purported appeal as a petition for an extraordinary writ. (227 Cal.App.3d at p. 837.) Within the present context, this procedure is particularly justified. Under normal circumstances, the purpose of a nonappealability rule is to preclude immediate appellate review of interim rulings in favor of subsequent review of all issues in a single appellate proceeding. Here, in contrast, the purpose of the nonappealability rule is just the opposite, to permit immediate writ review instead of the slower process of review by appeal. Subsequent review is not an option. As a practical matter, if we do

not treat this purported appeal as a writ petition, the denial of reunification services will *never* be reviewed. The unavailability of subsequent review, and the profound significance of a denial of reunification services, constitute unusual circumstances justifying treatment of the purported appeal as a writ petition. (*In re Albert B.* (1989) 215 Cal.App.3d 361, 373 [263 Cal.Rptr. 694].)

■ The substantive problem is straightforward. Under Civil Code section 232, subdivision (a)(6), Dr. Coptich and Dr. Granger each had to be a "licensed psychologist" in order for their testimony to support a determination that Paul is a pedophile. Dr. Granger is not a licensed psychologist. Consequently, the denial of reunification services was unsupported by the statutorily required evidence of pedophilia.

The department of social services contends the evidentiary requirements of Civil Code section 232, subdivision (a)(6), for termination of parental rights based on mental disability are not properly engrafted onto the provisions of Welfare and Institutions Code section 361.5, subdivision (b)(2), for denial of reunification services based on mental disability. The court in *In re Rebecca H., supra,* 227 Cal.App.3d at pages 838-839, gave two convincing reasons for rejecting this argument. First, section 361.5 refers to a mental disability "that is described in Section 232 of the Civil Code." (Welf. & Inst. Code, § 361.5, subd. (b)(2).) The use of the word "described," rather than simply the word "defined," demonstrates "a legislative intent to apply the evidentiary demands of section 232, subdivision (a)(6), to determinations of mental disability under section 361.5, subdivision (b)(2)." (*In re Rebecca H., supra,* 227 Cal.App.3d at p. 839.) Second, because of the profound importance of a denial of reunification services based on mental disability, "it is not unreasonable to require that judicial decisions about the mental status of parents be based upon the evaluations of more than one professional who has attained an advanced level of training and experience." (*Ibid.*)

The department of social services argues that a lesser evidentiary burden is set forth in *In re Christina A.* (1989) 213 Cal.App.3d 1073, 1079 [261 Cal.Rptr. 903], which said that evidence from "competent mental health professionals" was required to establish "that appellant came within the provisions of section 361.5, subdivision (b)(2)." This statement, however, is properly understood as referring only to the requirement of subdivision (c) of Welfare and Institutions Code section 361.5 that "competent evidence from mental health professionals establishes that, even with the provision of services, the parent is unlikely to be capable of adequately caring for the child within 12 months." Subdivision (c) only permits this lesser level of proof to establish the inability to utilize reunification services. Subdivision (b)(2) of Welfare and Institutions Code Section 361.5, by referring to a

mental disability "that is described in Section 232 of the Civil Code," imposes the greater evidentiary burden to establish the underlying mental disability itself.

The department of social services also contends the error was harmless. This point gives us pause. It seems utterly beyond question that Paul is a pedophile. According to Dr. Coptich's testimony, the mere fact that Paul committed the molestations for which he was convicted in 1983 means he is a pedophile. Evidently Paul's condition could not have dissipated with the passage of time; Dr. Coptich testified he has never seen anybody cured of pedophilia and there is only a 5 percent rate of remission. Dr. Granger, who would seem to be in a good position to know, thinks Paul is a pedophile who should have no unsupervised involvement with children "for the rest of his natural life." This opinion is based on prior diagnoses of pedophilia by two psychiatrists. Dr. Granger's lack of a license does not indicate an absence of the advanced level of training and expertise promoted by the evidentiary demands of Civil Code section 232, subdivision (a)(6). He has been practicing psychology since 1975. He lacks a license not because he is a novice, but because he is exempt from the licensing requirements. It seems virtually certain that if we strike down the ruling denying reunification services, the department of social services will simply produce a second licensed psychologist to establish what already appears to be obvious.

But we are dealing with a statutorily mandated standard of the evidence required to support a finding of mental disability. That standard was not met here. The court's ruling was unsupported by substantial evidence. The concept of harmless error plays no role in an analysis of the sufficiency of evidence to support a ruling. If the ruling was unsupported by substantial evidence, it is necessarily reversible.

Moreover, if we were to uphold the denial of reunification services based on a harmless error analysis, we would render meaningless the statutory requirement of evidence from two "licensed psychologists." A convicted child molester could be declared mentally disabled for purposes of denying reunification services and parental rights not upon the evidence of two experts, but simply upon proof of the conviction. Some might argue this is a good idea, but that argument should be made to the Legislature, not the courts. The Legislature has told us that if reunification services are to be denied based on evidence from two psychologists, those psychologists must be licensed. To uphold the present denial of reunification services based on a harmless error analysis would negate this legislative mandate.

We therefore have no alternative but to order the juvenile court to retry this issue, and take comfort in the knowledge that, sometimes, a course of

action that seems contrary to common sense has its proper place in the greater scheme of legal process.

Let a peremptory writ issue directing the juvenile court to vacate its dispositional order and conduct a rehearing on the issue whether Paul suffers from a mental disability within the meaning of Welfare and Institutions Code section 361.5, subdivision (b)(2), at which the department of social services shall have further opportunity to present the expert testimony required by Civil Code section 232, subdivision (a)(6).

Low, P. J., and Haning, J., concurred.