[Nos. H007451, H008245. Sixth Dist. Mar. 18, 1992.]

In re MICHELLE M., a Person Coming Under the Juvenile Court Law.
MONTEREY COUNTY DEPARTMENT OF SOCIAL SERVICES,
Plaintiff and Respondent, v.
BRENDA M., Defendant and Appellant.

## COUNSEL

Scott Ewbank for Defendant and Appellant.

Douglas C. Holland, County Counsel, I. L. Hollingsworth and J. Michael Hogan, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

ELIA, J.—Brenda M. appeals an order terminating reunification services to her daughter Michelle (No. H007451). She argues this order is appealable and that insufficient evidence supports the juvenile court's finding that reasonable reunification services were offered her. We conclude, as have other appellate districts, that the order is not appealable, but we will treat the appeal as a petition for an extraordinary writ. Since we find substantial evidence to support the juvenile court's finding, however, we will deny the writ petition.

She has also appealed an order terminating her parental rights to her daughter, pursuant to Welfare and Institutions Code section 366.26 (No. H008245).[1] We ordered these appeals considered together. In this latter appeal, she argues the juvenile court should have determined the adequacy of reunification services, and that there was not clear and convincing evidence that Michelle would be adopted. Because a juvenile court need not review or evaluate reunification services at a section 366.26 hearing, and because there was clear and convincing evidence that Michelle was likely to be adopted, we will affirm the juvenile court's order terminating appellant's parental rights and freeing Michelle for adoption.

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

FACTUAL AND PROCEDURAL BACKGROUND

Michelle was born on October 1, 1981. She was taken into protective custody in Santa Cruz County on February 25, 1989, when her mother was arrested. On February 28, a petition was filed alleging that Michelle came under section 300, subdivisions (b) and (g). On March 18, Michelle was placed in the G. foster home; Mrs. G. had been Michelle's elementary school teacher. At a combined jurisdiction and disposition hearing on March 30, the juvenile court adjudicated Michelle a dependent child, and continued her placement in foster care.

On April 13, 1989, Monterey County, Michelle's legal residence, accepted jurisdiction. A six-month review hearing was held on September 15, 1989, and a twelve-month review hearing on March 6, 1990. At this latter hearing, the juvenile court ordered Michelle returned to appellant's custody.

Between March 23 and March 26, 1990, however, appellant tested positive for illegal drug use. On March 26, she was arrested, and Michelle was returned to foster placement with the G's.

On March 28, 1990, a section 387 supplemental petition was filed, alleging that the previous disposition had been ineffective in protecting Michelle. Appellant did not contest this petition at the jurisdiction hearing on April 17, 1990. A disposition hearing was held between June 14 and June 19. The juvenile court made various orders at the conclusion of this hearing, including setting a section 366.26 hearing date in September 1990 and terminating reunification services to appellant. Appeal No. H007451 is taken from this order.

On November 29, 1990, the juvenile court heard a section 366.26 hearing. On December 10, 1990, a minute order was filed which terminated appellant's parental rights. Appeal No. H008245 is taken from this order.

I. *Appeal No. H007451*

DISCUSSION

A. *Appealability*

██ As a threshold issue, we must determine whether the order terminating reunification services is appealable. We conclude, as have other appellate districts, that it is not.

Prior to 1989, there was a significant division in the appellate case law on the issue of whether section 366.25 permanency planning orders were or

were not appealable. This history is detailed in *In re Eli F.* (1989) 212 Cal.App.3d 228, 234-235 [260 Cal.Rptr. 453] and we will not repeat it here. Effective January 1, 1989, the juvenile law was substantially amended: For children like Michelle who were adjudicated dependent after January 1, 1989, for whom reunification efforts have failed, a decision to move to a section 366.26 hearing is now made either at a 12-month review hearing (§ 366.21, subd. (g)(3)), or at an 18-month review hearing (§ 366.22). Before a section 366.26 hearing, the juvenile court must first, under section 366.21, subdivision (h) or section 366.22, subdivision (a), terminate reunification efforts to the parents. Reunification services may not be terminated at the 12-month review hearing under section 366.21, subdivision (g)(1), however, absent "clear and convincing evidence that reasonable services have been provided or offered to the parents."

In this case, a supplemental petition under section 387 was filed after Michelle's return to appellant's custody failed. At the combined jurisdiction and disposition hearing on the supplemental petition, the juvenile court ordered reunification services terminated, and made a finding that reasonable reunification efforts had been provided. This order was made almost 15 months after the original adjudication of dependency. The juvenile court also scheduled a section 366.26 hearing at this time.

In 1989, the Legislature amended section 366.26 to add subdivision (k) which states "An order by the court directing that a hearing pursuant to this section shall be held is not an appealable order, but may be the subject of review by extraordinary writ." (Stats. 1989, ch. 913, § 17, pp. 2810-2813.) This amendment was effective January 1, 1990, prior to the date of the order in this case.

For children adjudicated dependent before January 1, 1989, permanency planning hearings were held under section 366.25. If reunification efforts failed, and a child was found adoptable, the juvenile court could authorize the filing of a Civil Code section 232 petition to terminate parental rights. Section 366.25, subdivision (j), added to section 366.25 in 1988, (Stats. 1988, ch. 1075, § 6, pp. 2583-2585, eff. Jan. 1, 1989) provides "An order by the court that authorizes the filing of a petition to terminate parental rights pursuant to [Civil Code] Section 232 or that authorizes the initiation of guardianship proceedings is not an appealable order but may be the subject of review by extraordinary writ."

The language in section 366.26, subdivision (k) thus parallels that in section 366.25, subdivision (j). This language was interpreted by the Third Appellate District in *In re Eli F.*, *supra*, 212 Cal.App.3d 228, to preclude

only appeals from orders referring dependency proceedings for the commencement of Civil Code section 232 proceedings, but to allow appellate review of other, contemporaneous orders made at the permanency planning hearing. (212 Cal.App.3d at pp. 235-236.)

The Fifth Appellate District interpreted section 366.25, subdivision (j) in *In re Kristin W.* (1990) 222 Cal.App.3d 234 [271 Cal.Rptr. 629]. It agreed that "authorization" orders were reviewable only by writ and that contemporaneous orders were cognizable on appeal. (*Id.* at p. 245.) The court made a distinction, however, between a challenge to an implied order terminating reunification services, which as a "direct attack" (*id.* at p. 246) on the authorization order was not reviewable on appeal, and a challenge to the sufficiency of a reunification plan made prior to the permanency planning hearing, which was. (*Id.* at p. 248.)

And in *In re Elizabeth M.* (1991) 232 Cal.App.3d 553 [283 Cal.Rptr. 483], the Fourth Appellate District, in an appeal from a permanency planning hearing under section 366.25, considered whether appellants' challenge to the adequacy of reunification services was appealable. It took exception to *Kristin W.*'s conclusion that section 366.25, subdivision (j)'s preclusion of an appeal from an authorization order also encompassed a challenge to the adequacy of reunification services, and concluded instead that since the challenge sought a reversal of the authorization order, it too was not cognizable on appeal. The court thus declined to review the issue.

More recently, cases from several appellate districts have concluded that orders contemporaneous with those setting section 366.26 hearings are only reviewable by writ. Relying on section 366.26, subdivision (k), the Fifth Appellate District, in *In re Rebecca H.* (1991) 227 Cal.App.3d 825 [278 Cal.Rptr. 185], concluded that an order denying reunification services under section 361.5, subdivision (b) and scheduling a section 366.26 hearing was reviewable only by writ. The court reasoned, following *Eli F.* and *Kristin W.*, that "a challenge to a complete denial of reunification 'constitutes a direct attack' on a provision in the disposition order which sets a section 366.26 hearing" and was thus not cognizable on appeal. (*Id.* at p. 836.) The court proceeded to treat the appeal as a writ petition. (*Id.* at p. 837.) This conclusion was reiterated in *In re Matthew C.* (1992) 3 Cal.App.4th 249 [4 Cal.Rptr.2d 303].

In *In re Catherine S.* (1991) 230 Cal.App.3d 1253 [281 Cal.Rptr.746], as in *Rebecca H.*, appellant challenged a denial of reunification services. The First Appellate District, agreeing that this denial was nonappealable, nonetheless reached the issue by treating the appeal as a writ petition. (230 Cal.App.3d at pp. 1256-1257.)

Three cases from Division One of the Fourth Appellate District have also concluded that the Legislature did not intend to preserve issues related to the decision to terminate reunification services for review on appeal from a section 366.26 hearing order. (*In re Taya C.* (1991) 2 Cal.App.4th 1, 5-9 [2 Cal.Rptr.2d 810]; *In re Amanda B.* (1992) 3 Cal.App.4th 935, 939-942 [4 Cal.Rptr.2d 922]; *Cynthia D. v. Superior Court* (1992) 3 Cal.App.4th 913, 917-920 [4 Cal.Rptr.2d 909].)

Several of these cases note that the legislative policy underlying the amended statutes is to expedite the resolution of juvenile cases: to allow children who cannot reunite with their parents to move to a new, permanent home as soon as possible. Denying appellate review of the adequacy of reunification services serves this policy.

In this case, counsel for appellant has filed an appeal from the September 1990 order terminating reunification services. Since we have concluded that issues pertaining to this order are not reviewable by appeal, we could, as respondent requests, dismiss it. We choose not to do so in this instance however.[2] We are mindful that this district has no decisional precedent in this area. We use this occasion to put the practicing bar on notice, however, that we intend from this time on to entertain *only* writ review of termination of reunification issues in sections 366.21 and 366.22 hearings, and to entertain that review only if it is requested in a timely fashion.

█ We can only reiterate what the court in *Cynthia D.* said: "*When* must the writ petition be filed? Obviously, it should be commenced sufficiently early to permit adjudication of the issues raised in the petition before the [section 366.26] selection and implementation hearing is commenced. [Citation.] All referrals require that the selection and implementation hearing be held within 120 days of the date of referral. (§ 366.21, subd. (g)(3); § 366.22, subd. (a); § 361.5, subd. (f).) Considering the urgency of juvenile dependency matters generally, and the likely time requirements of the Court of Appeal in ruling on the petition, it is obvious that counsel should file the writ petition within days, or at least weeks of the date of the order claimed to be in error. . . ." (3 Cal.App.4th at pp. 921-922; see also *In re Matthew C., supra*, 3 Cal.App.4th at p. 260 ["In making (§ 366.21 or 366.22) orders nonappealable but reviewable by writ, the Legislature appears to have intended that any appellate review be sought prior to the holding of the section 366.26 hearing."] This district intends to strictly uphold this clear legislative mandate.

---

[2]This is not a situation, as in *Matthew C.*, where appellants failed to seek any review of the section 366.21 hearing order until their appeal from the section 366.26 order. And unlike *Amanda B.*, appellant here did not wait to seek review of the order terminating reunification services until after the section 366.26 hearing was held.

B. *Adequacy of Reunification Services*

On the merits, we reject appellant's argument that insufficient reunification services were offered her. We have reviewed the entire record, and find substantial evidence to support the juvenile court's finding that reasonable reunification services were indeed offered appellant.

The March 21, 1989, social worker's report submitted for the jurisdiction and disposition hearing stated appellant became a heroin addict at age 18. Prior to Michelle's birth, appellant was court-ordered into three different drug treatment programs. Appellant's history of arrests and incarcerations, all related to her substance abuse problem, dated back to 1977, four years prior to Michelle's birth. Numerous referrals to children's protective services in Santa Cruz and Monterey Counties had been made from the time appellant was pregnant with Michelle. Appellant had frequently been incarcerated during Michelle's life. During these times, Michelle would live with a family friend or with appellant's longtime companion, David F. Since Michelle's birth, appellant had attended a fourth drug program. The longest appellant had been able to remain drug-free was three years.

The report prepared for the six-month review hearing held on September 5, 1989, in Monterey County stated that a reunification service plan had been prepared on March 1, 1989. Michelle had had visits with appellant since her release on bail in July. David F. had been rejected as a potential placement for Michelle, despite having known her for seven years, because of alcohol abuse and domestic violence concerns. At the time the report was prepared, appellant was being tested for drug use, attending four Alcoholics Anonymous (AA) or Narcotics Anonymous (NA) meetings weekly, attending individual counseling sessions weekly, attending conjoint therapy sessions with Michelle's therapist as appropriate, volunteering two days a week at a treatment facility, keeping her social worker informed of her progress and problems, and keeping appointments for visits with Michelle and having unsupervised visits with her. Reunification services were stated to have included "case management, monitoring placement, monitoring therapy and consulting with therapists, attorneys, parole officer, arranging and/or supervising visits."

The court social worker's report prepared for the March 6, 1990, 12-month review reported that over the preceding 6-month period, appellant had remained drug-free, David F. had voluntarily enrolled in Alternatives to Violence, and Michelle and appellant were enjoying unsupervised visits of several days' duration. Appellant was also continuing in counseling, attending NA or AA meetings regularly, and was reporting regularly to her parole and probation officers. The service plan was recommended to remain the same.

The next report in the record is that prepared for the disposition hearing on the supplemental (§ 387) petition, held in June 1990. This report chronicles Michelle's return to appellant's custody, appellant's subsequent relapse into drug use, her rearrest, and Michelle's return to foster care. It noted that of Michelle's eight and a half years, she had spent a total of only four and a half with appellant. For the remainder of that time, appellant had either been incarcerated, or in drug treatment.

At the June 1990 disposition hearing, appellant's probation officer testified that appellant had admitted using drugs and alcohol before and during Michelle's return to her custody in March. Appellant admitted in testimony that she had used alcohol in February 1990, that she had used drugs five or six times in February and March, and that she had used heroin twice while Michelle was in her care. By her own account, she had used heroin each year from age 19 to the present, except when she had been incarcerated. She testified that having Michelle back didn't cause her relapse—it was small daily stresses, and financial unpreparedness. She acknowledged it was her fault, since she had failed to look for employment.

■ Overwhelming evidence in this record supports the juvenile court's determination that reasonable reunification services were provided appellant. She was required to monitor and seek support for her addiction that would both uncover the reasons underlying her drug abuse and that would allow her the support she needed to refrain from further use. Indeed, it is hard to imagine what more could have been offered appellant to assist her in fighting her battle with drug addiction. Tragically, appellant's substance abuse problem continued despite these efforts. There is nothing in this record to suggest that a lack of appropriate services was responsible for this failure, however.

Appellant also suggests that new or different services should have been offered her after the juvenile court terminated reunification services in June 1990. This is specious. The statutory scheme under which the juvenile court was proceeding mandates an end to reunification services—to court-ordered efforts to reunite parent and child—prior to moving to the section 366.26 hearing at which a permanent plan other than returning home will be chosen for a child. Reinstituting further or different reunification efforts at this juncture would do damage to the logic of the statute.

## II.  *Appeal No. H008245*

### A.  *Review of Reunification Services*

■ At a 12- or 18-month review hearing, prior to ordering a section 366.26 hearing, a juvenile court must determine that reasonable reunification services have been provided or offered to the parents of a dependent child. (§ 366.21, subd. (g)(1); § 366.22, subd. (a); Cal. Rules of Court, rule 1461 (c)(2)(E).) This determination is thus a prerequisite to the section 366.26 permanency hearing.

At the section 366.26 hearing, the juvenile court's only duty is to determine which permanent plan—adoption, guardianship or long-term foster care—is best for the child, to implement that plan, either by terminating parental rights to free a child for adoption, by appointing a guardian, or by ordering the child's long-term placement with a foster family (§ 366.26, subd. (b).)

Appellant points to the reference in section 366.26, subdivision (c)(1) to the "Section 361.5 [findings] that reunification services shall not be offered . . ." as an indication that the adequacy of reunification services is an issue at the section 366.26 hearing. She misunderstands this language, which refers to a situation, like those in *Rebecca H.* and *Catherine S.*, where the juvenile court determines that reunification need not be provided a parent, for various reasons enumerated in section 361.5, subdivision (b), and immediately schedules a section 366.26 hearing. A determination regarding the adequacy of services that have been provided parents must be made before a section 366.26 hearing is scheduled in order for services to be terminated and the case to move to permanency planning. This, as we have discussed *infra*, is what the juvenile court did, and there is ample evidence to uphold its determination. We thus reject appellant's argument that the juvenile court had any obligation to review the adequacy of services to appellant at the section 366.26 hearing.

### B.  *Evidence of Adoptability*

■ Appellant's second assignment of error is that the likelihood that Michelle would be adopted was not established by clear and convincing evidence, as required by section 366.26, subdivision (c)(1). We disagree.

Judy Parrish investigated and prepared the section 366.26 report. In so doing, she reviewed the court file and the case record, consulted with the social workers who had been assigned to the case, read reports from and

consulted with Michelle's therapist, and interviewed Michelle and her foster parents. She testified that in her opinion Michelle was likely to be adopted because that is what Michelle wanted; to be part of the foster family she was living with. Michelle had, at that point, lived with her foster family for almost 21 months. She trusted them, knew what it meant to be adopted, and wanted them to be her parents. Ms. Parrish also testified that, in addition, the foster parents were also "very clear that [adoption] is what they want."

Christine Lerable, whose assignment was to address the issue of Michelle's adoptability, testified that after investigation and consultation with other caseworkers, and after having interviewed Michelle and her foster parents, she had concluded that Michelle was adoptable. She reiterated that Michelle wanted to be adopted by her foster family. In her opinion, the foster parents were very committed to Michelle, and had a strong desire to adopt her.

Ruth Fesmeyer, Michelle's therapist for the previous 18 months, also testified that Michelle wished to be adopted by her foster family, and said that she stated that desire "weekly."

No contrary evidence was presented whatsoever. This case is thus quite unlike *In re Amelia S.* (1991) 229 Cal.App.3d 1060, 1065 [280 Cal.Rptr. 503], in which a hearing report indicated that "a few foster parents were *considering* adoption." We also reject appellant's suggestion that the evaluators in this case "ignored" the March 1990 reunification between appellant and Michelle in coming to the conclusion that Michelle was adoptable. There was unanimity of opinion that Michelle felt angry and hurt at her mother's continuing abuse of drugs, and that it would be in Michelle's best interests to be allowed to make a permanent home with her foster family. We have no difficulty in concluding, on this record, that clear and convincing evidence supports the juvenile court's determination that Michelle was likely to be adopted.

We are not otherwise persuaded by appellant's reference to the February 26, 1991, court report, filed after this appeal was taken, in which the court was notified that the foster parents had separated. The report went on to state that Michelle continued to desire that her foster mother adopt her, and that respondent had decided it would be in Michelle's best interests to proceed with the adoption.

## Disposition

The juvenile court's order in appeal No. H008245 is affirmed. The petition for an extraordinary writ, No. H007451, is denied effective on the finality of our decision in the appeal. (Cal. Rules of Court, rule 24(a).)

Cottle, Acting P. J., and Agliano, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied July 9, 1992.

---

*Retired Presiding Justice of the Court of Appeal, Sixth District, sitting under assignment by the Chairperson of the Judicial Council.