[Nos. F019721, F020580. Fifth Dist. Sept. 1, 1994.]

In re REBEKAH R., a Person Coming Under the Juvenile Court Law.
TULARE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,
Plaintiff and Respondent, v.
TERRI S. et al., Defendants and Appellants.

1640

**COUNSEL**

Patricia L. Watkins and Gregory M. Chappel, under appointment by the Court of Appeal, for Defendants and Appellants.

Lita O'Neill Blatner, County Counsel, and Teresa M. Saucedo, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**DIBIASO, J.**—The juvenile court entered a disposition order which in part denied reunification services (Welf. & Inst. Code,[1] § 361.5, subd. (b)) to the mother, Terri S. In a later, separate disposition order it denied services to the father, Robert R. Both parents appealed. The mother raised the denial of services as well as the juvenile court's jurisdictional finding under section 300, subdivision (e). The father submitted a *Wende* brief.[2] While these appeals were pending, the juvenile court terminated the rights of each parent (§ 366.26). Both parents again appealed, this time raising only the juvenile court's refusals to provide services.

We will dismiss the first set of appeals pursuant to our opinion in *In re Rebecca H.* (1991) 227 Cal.App.3d 825, 836 [278 Cal.Rptr. 185]. We will also hold that the mother waived her right to question on appeal the propriety of the no-services order as to her. Last, we will conclude the evidence was insufficient to support the court's no-services order as to the father and therefore reverse the order terminating his parental rights.

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]*People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071].

STATEMENT OF CASE AND FACTS

Tulare County Child Protective Services detained Rebekah R., born July 1, 1992, on August 27, 1992. According to a section 300 petition filed shortly thereafter by the Department of Public Social Services (department), "[o]n or about August 27, 1992, minor was found to be suffering from traumatic injuries, which included, but was [sic] not limited to, bruises and multiple fractures to minor's body. Further, minor was found to be suffering from older healing fractures. Such traumatic injuries would not ordinarily occur except as the result of unreasonable and/or neglectful acts or omissions by minor's parents or other caretaker who had responsibility of minor. In addition, minor's parents failed to obtain medical attention for minor's injuries in a timely manner. Minor's parents failed to protect the minor." Based on these allegations, the department asked the juvenile court to exercise jurisdiction over Rebekah pursuant to section 300, subdivisions (a), (b), (e) and (i).

On August 27, 1992, the father and mother had taken the infant to a local health clinic when it appeared that one of Rebekah's legs was swollen; she did not move it or want it to be touched. A physical exam of the infant revealed she had a broken left leg, a broken arm and suspicious bruises.

Due to the nature of her injuries, Rebekah was transferred to Valley Children's Hospital, where full body X-rays were taken. According to the radiologist who examined the X-rays, Rebekah had sustained multiple fractures of her left leg; the breaks were three to six weeks old and had partially healed. The infant had also suffered another fracture of her left leg, which had most likely occurred within 48 hours of the X-ray. Further, there were fractures of her 11th rib on both the right and left sides of her body.

In the doctor's estimation, none of these fractures were the result of birth trauma and none could have been caused by the normal handling of an infant. The doctor found no evidence of brittle bone disease. The fresh fracture to Rebekah's left leg occurred when some third person brought it down forcibly against an object, struck it, fell on it, or stepped on it with great force. Possible causes for the older leg injuries were the forcible pulling or twisting of the limb. Each fracture, however, required a separate wrenching motion. The rib fractures could have been caused by holding the infant's chest and shaking her furiously. Rebekah was, in the doctor's opinion, a battered child.

Until August 27th, Rebekah had lived with her parents and paternal grandparents. The father, mother and paternal grandparents were the only

ones who had ever been alone with the infant. Generally, the mother took care of Rebekah, though the grandmother would occasionally babysit.

The father denied any knowledge of the cause of Rebekah's injuries. He did not believe the mother or his parents were capable of inflicting them. Likewise, the mother did not believe the father was capable of harming Rebekah. When asked if she were capable of causing such injuries, the mother responded, "You never know."

The mother conceded she had treated her daughter roughly by picking her up too quickly but denied jerking or twisting her. The grandparents had previously criticized the mother for the way she handled Rebekah. The mother also admitted dropping the baby twice. At the jurisdictional hearing, the mother admitted she once fell on Rebekah when the child was three to six weeks old.

Prior to the jurisdictional hearing, both parents had been bound over to the superior court on criminal charges stemming from Rebekah's injuries. After the jurisdictional hearing, the juvenile court found Rebekah to be a dependent child under section 300, as alleged.

In its report prepared for the disposition hearing in this case, the department recommended the juvenile court deny both parents reunification pursuant to section 361.5, subdivision (b)[3] and set the matter for a permanency planning hearing (§ 366.26).

---

[3]Section 361.5, subdivision (b) provides in relevant part:

"(b)    Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following:

"(1)    That the whereabouts of the parent or guardian is unknown. A finding pursuant to this paragraph shall be supported by an affidavit or by proof that a reasonably diligent search has failed to locate the parent or guardian. The posting or publication of notices is not required in that search.

"(2)    That the parent or guardian is suffering from a mental disability that is described in Chapter 2 (commencing with Section 7820) of Part 4 of Division 12 of the Family Code and that renders him or her incapable of utilizing those services.

"(3)    That the minor had been previously adjudicated a dependent pursuant to any subdivision of Section 300 as a result of physical or sexual abuse, that following that adjudication the minor had been removed from the custody of his or her parent or guardian pursuant to Section 361, that the minor has been returned to the custody of the parent or parents or guardian or guardians from whom the minor had been taken originally, and that the minor is being removed pursuant to Section 361, due to additional physical or sexual abuse. However, this section is not applicable if the jurisdiction of the juvenile court has been dismissed prior to the additional abuse.

"(4)    That the parent or guardian of the minor has been convicted of causing the death of another child through abuse or neglect.

"(5)    *That the minor was brought within the jurisdiction of the court under subdivision (e) of Section 300 because of the conduct of that parent or guardian.*

"(6)    That the minor has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of severe sexual abuse or the infliction of severe physical harm by a

The disposition hearing as to the mother was conducted in March of 1993. By that time, the mother had been convicted and sentenced to a four-year prison term in connection with the charges which arose out of Rebekah's abuse. The juvenile court adjudged Rebekah a juvenile dependent pursuant to section 300, subdivisions (a), (b), (e) and (i), and, among other orders, denied the mother reunification services. The court based this no-services order on the finding that the minor was a child described in section 300, subdivision (e) because of the mother's conduct. In the process, the court expressly found the mother had personally inflicted Rebekah's injuries. The juvenile court also announced it would set a permanency planning hearing at the disposition hearing to be held with respect to the father.

Based on the request of the father's attorney, the juvenile court continued the matter for disposition as to the father so that he could obtain a psychological evaluation. The court believed an evaluation would be helpful and should address "the issue of [the father's] behavior in light of what happened to this child after her birth, and I want the evaluator to determine whether, given the fact that—whether the issues which led to his not reporting, and dealing with the abuse this child was suffering in a timely fashion, whether those problems which—whether he had psychological, or emotional, or learning problems which led to that, and whether those problems could be overcome within the time left for him to reunify."

The psychiatrist who subsequently examined the father interpreted the court's directive as requiring an assessment of whether the father's failure to report the mother's abuse of Rebekah was due to any acute psychological problems, such as a psychotic disorder, which could not be addressed through reunification services. The doctor rendered the following opinion:

". . . [The father] shows no evidence of psychotic mental disorder or a major affective disorder. There is no acute psychological problem that could not be addressed through reunification services.

"The [father's] history of problems in High School, past legal problems, as well as inability to maintain a stable work record indicates some evidence of an underlying personality disorder.

"It is not possible for me to state with any certainty that the [father] really did or did know [sic] about his wife abusing their child. The evidence,

---

parent or guardian, as defined in this subdivision, and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian." (Italics added.)

however, indicates that the wife has a history of drug abuse. It has been my experience in working with many drug abusers and drug addicts that these individuals are typically very good at manipulation and deceit. It is also significant that not only did the [father] fail to observe any evidence of child abuse but his own parents (with whom they lived) as well as the doctors and nurses who had seen the child within the preceding days and weeks had also failed to detect any evidence of child abuse.

"Given the [father's] limited education as well as his average to below average intellect it would seem unreasonable for him to be more capable of detecting child abuse then [sic] his own parents (who lived with them) as well as the doctors and nurses who had seen the baby, including an M.D. and LVN who had seen the baby within 7 days of the time she was detected to have been suffering from battered baby syndrome."

By the time of his disposition hearing, the father had been convicted of misdemeanor child endangerment and was serving a six-month jail term. He was subject to release anytime between late May and early July 1993. The prosecutor had reduced the charges against the father to a misdemeanor because the district attorney's office felt the father had not caused Rebekah's injuries. Prior to his incarceration, the father had voluntarily entered parenting classes, enrolled in counseling, and visited once a week with Rebekah.

At the disposition hearing, the father testified he had trouble accepting what had happened to Rebekah. He did not want to believe the mother was responsible. However, it was obvious to the father that nobody else but the mother could have hurt the child.

Sometime during the month preceding the disposition hearing, the father had mentioned to his parents the possibility of reuniting with the mother. However, the father testified he had come to realize he wanted his daughter back more than he wanted the mother back.

The court denied the father reunification services and set the case for permanency planning as to both parents in August 1993. Both parents filed notices of appeal after the juvenile court established a date for the permanency planning hearing.

At the subsequent section 366.26 hearing, the court terminated the rights of both parents and freed Rebekah for adoption. Both parties filed notices of appeal from this order.

The parties' several appeals have been consolidated.

DISCUSSION

I. *Appeals From Orders Setting Section 366.26 Hearing*

In her appeal from the disposition order as to her, the mother challenges the juvenile court's jurisdictional finding under section 300, subdivision (e) and its refusal to give her reunification services. In his appeal from the disposition order as to him, the father, through his court-appointed counsel, filed a *Wende* brief. The department moved to dismiss both parents' appeals on the ground the two disposition orders were nonappealable (§ 366.26, subd. (k)). We deferred ruling on the department's motion pending consideration of the merits of the consolidated appeals. We will now grant the motion and dismiss the parents' purported appeals from the disposition orders.

■ In dependency proceedings, the right to appeal does not accrue until the court orders a disposition. (§ 395;[4] *In re Megan B.* (1991) 235 Cal.App.3d 942, 950 [1 Cal.Rptr.2d 177].) Ordinarily, on appeal from a disposition a parent may present issues which have arisen from the proceedings up to that point. However, this rule is not applicable when the disposition includes a blanket denial of all reunification services under section 361.5, subdivision (b) and an accompanying order for a section 366.26 hearing. (*In re Rebecca H., supra,* 227 Cal.App.3d at p. 836.) Under such circumstances, section 366.26, subdivision (k) operates to displace section 395, and only writ review is available. (227 Cal.App.3d at p. 836.)

---

[4]Section 395 provides:

"A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment; but no such order or judgment shall be stayed by the appeal, unless, pending the appeal, suitable provision is made for the maintenance, care, and custody of the person alleged or found to come within the provisions of Section 300, and unless the provision is approved by an order of the juvenile court. The appeal shall have precedence over all other cases in the court to which the appeal is taken.

"A judgment or subsequent order entered by a referee shall become appealable whenever proceedings pursuant to Section 252, 253, or 254 have become completed or, if proceedings pursuant to Section 252, 253, or 254 are not initiated, when the time for initiating the proceedings has expired.

"An appellant unable to afford counsel, shall be provided a free copy of the transcript in any appeal.

"The record shall be prepared and transmitted immediately after filing of the notice of appeal, without advance payment of fees. If the appellant is able to afford counsel, the county may seek reimbursement for the cost of the transcripts under subdivision (c) of Section 68511.3 of the Government Code as though the appellant had been granted permission to proceed in forma pauperis."

In *Rebecca H.*, this court concluded that subdivision (k) of section 366.26[5] carved out an unambiguous and well-conceived exception to the general rule contained in section 395 permitting appeals from disposition orders. In part, we reasoned:

"An aggrieved party may be able to obtain timely appellate review of a disposition order which includes a reunification plan. However, where the juvenile court has denied all reunification, a parent . . . does not as a practical matter have enough time to secure relief by way of a direct appeal before a hearing under section 366.26 is held.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . When a juvenile court has decided against reunification altogether, an expeditious method must exist by which a parent may obtain review of the ruling before the court orders the termination of parental rights. The Legislature provided such a means by enacting section 366.26, subdivision (k). In so doing, it has created a scheme sensitive to both the goal of reunification where feasible and the recognition of the importance of providing 'stable, permanent homes' (§ 366.26) for minor children whose parents are unable to care for them. The filing of a timely petition for an extraordinary writ permits appellate review of the denial of reunification prior to the date the section 366.26 hearing is held. Should the reviewing court conclude reunification services were improperly refused, seasonable extraordinary relief could be granted." (*In re Rebecca H., supra*, 227 Cal.App.3d at p. 836.)

Thus, the juvenile court's decision to deny the mother reunification services may not be reviewed by way of an appeal from the relevant dispositional order. (*In re Rebecca H., supra*, 227 Cal.App.3d at p. 837.)

We believe *Rebecca H.* also resolves the other two issues before us arising out of the parents' respective attempts to appeal from the disposition orders, that is: (1) whether the mother by such an appeal may challenge the jurisdictional finding under section 300, subdivision (e); and (2) whether the father by such an appeal can secure *Wende* review. Nothing in *Rebecca H.* warrants limiting its application to only those appellate issues which involve the propriety of the portion of the disposition order that denies a parent reunification services. When the juvenile court rejects reunification, it must conduct a permanency planning hearing promptly after entry of the disposition order. (See § 361.5, subd. (f).) The expeditious review of such a

---

[5]Section 366.26, subdivision (k) provides: "An order by the court directing that a hearing pursuant to this section be held is not an appealable order, but may be the subject of review by extraordinary writ."

disposition order is no less important when the claim of error pertains not to the denial of reunification but rather to the underlying jurisdictional finding or some other matter which goes to the validity of the order. (See *In re Rebecca H., supra,* 227 Cal.App.3d at pp. 836-837.) In all these instances, the filing of a timely petition for an extraordinary writ permits appellate review of the correctness of the disposition order before the date the section 366.26 hearing is held. Should the reviewing court determine that the disposition order must be reversed, "seasonable extraordinary relief could be granted." (227 Cal.App.3d at p. 836.)

We will therefore dismiss the parents' respective attempts to appeal from the disposition orders.

## II. ˙*Appeals From Orders Terminating the Parents' Rights*

As noted above, the parents filed notices of appeal from the juvenile court's orders severing their relationships with Rebekah. On these appeals both parents again challenge the propriety of those portions of the court's dispositional orders which denied each of them reunification services. Such issues are cognizable on an appeal from an order terminating parental rights. (See *In re Matthew C.* (1993) 6 Cal.4th 386, 401 [24 Cal.Rptr.2d 765, 862 P.2d 765].)[6]

The parents' contentions rest upon section 361.5, subdivision (c), which provides in relevant part:

"In deciding whether to order reunification in any case in which this section applies, the court shall hold a dispositional hearing. The probation officer shall prepare a report which discusses whether reunification services shall be provided. . . . [¶] *When paragraph (3), (4), or (5), inclusive, of subdivision (b) is applicable, the court shall not order reunification unless it finds that, based on competent testimony, those services are likely to prevent reabuse or continued neglect of the child or that failure to try reunification will be detrimental to the child because the child is closely and positively attached to that parent. The probation officer shall investigate the circumstances leading to the removal of the minor and advise the court whether there are circumstances which indicate that reunification is likely to be successful or unsuccessful and whether failure to order reunification is likely to be detrimental to the child.*

"The failure of the parent to respond to previous services, the fact that the child was abused while the parent was under the influence of drugs or

---

[6]Because the mother does not claim, as a part of this appeal, that the jurisdictional finding was erroneous, we need not decide whether such a finding may be reviewed on an appeal from a termination order.

alcohol, a past history of violent behavior, or testimony by a competent professional that the parent's behavior is unlikely to be changed by services are among the factors indicating that reunification services are unlikely to be successful. The fact that a parent or guardian is no longer living with an individual who severely abused the minor may be considered in deciding that reunification services are likely to be successful, provided that the court shall consider any pattern of behavior on the part of the parent that has exposed the child to repeated abuse." (Italics added.)

We will treat each parent's argument separately, since the two no-services orders were based upon different evidentiary records.

### A. *Order Denying Terri S. Reunification Services*

■ According to the mother, the order denying her services was erroneous because it was made in violation of the terms of section 361.5, subdivision (c). In particular, she contends the department did not conduct any investigation, let alone present any evidence, concerning "whether there are circumstances which indicate that reunification is likely to be successful or unsuccessful and whether failure to order reunification is likely to be detrimental to the child," as mandated by the subdivision. Instead, in the mother's estimation the department and the court proceeded as though there existed a per se rule requiring that she be denied services. She further maintains that none of the factors mentioned in subdivision (c) which mitigate against the possibility of successful reunification were present in her case.

The mother has overlooked the very different position she took in the trial court. At the beginning of the disposition hearing as to the mother, counsel for the mother voluntarily informed the court that due to the length of the mother's prison sentence, "[t]here isn't any real possibility [Terri S.] will be able to reunify with [Rebekah] in eighteen months." Counsel added, however, that the mother felt considerable remorse and wanted to leave the door open to future visitation. The mother, who was present at the disposition hearing, did not voice any opposition to her attorney's statements. Based on counsel's remarks and without requesting any comment from the department, the juvenile court made its disposition orders, including the provision which denied services to the mother.

In the absence of fraud, the admissions of an attorney in open court are binding upon the client. (*Bias* v. *Reed* (1914) 169 Cal. 33, 37 [145 P. 516]; *Bank of America* v. *Lamb Finance Co.* (1956) 145 Cal.App.2d 702, 708 [303 P.2d 86].) We believe counsel's statements made in the presence of her

client eliminated from the case any issue regarding reunification services for the mother and waived for purposes of appeal any claim that the juvenile court's no-services order as to the mother was erroneous. (See *Bank of America* v. *Lamb Finance Co.*, *supra*, 145 Cal.App.2d at p. 708, cited with approval in *Horn* v. *Atchison, T. & S. F. Ry. Co.* (1964) 61 Cal.2d 602, 605 [39 Cal.Rptr. 721, 394 P.2d 561]; see also *Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 386, 392 [139 P.2d 930].)

### B. *Order Denying Robert R. Reunification Services*

#### 1. *Introduction*

The department argued the juvenile court should enter a no-services order with respect to the father because the court's jurisdiction rested in part upon an affirmative finding under section 300, subdivision (e). At the outset of the dispositional hearing for the father, the juvenile court made it clear it understood the legal and factual basis for this recommendation. The juvenile court also acknowledged the father's position that, notwithstanding the sustained jurisdictional allegation, the court had discretion to order reunification if it found services would be in Rebekah's best interest. In this regard the court said: "[a]nd if there are some other perimeters the Court should consider other than the best interest of the minor, I appreciate your advice." This solicitation went unanswered.

Following the receipt of evidence and counsel's arguments, the court commented: "You know what the Court has to consider in these findings under Section 361.5 is set out under section 361.5(h) [*sic*], and there's six things I'm supposed to consider there." The court then proceeded to address each of the six factors identified in section 361.5, subdivision (h)[7] and ultimately announced its order denying the father reunification services.

---

[7]Section 361.5, subdivision (h) provides:

"(h)   In determining whether reunification services will benefit the child pursuant to paragraph (6) of subdivision (b), the court shall consider any information it deems relevant, including the following factors:

"(1)   The specific act or omission comprising the severe sexual abuse or the severe physical harm inflicted on the child.

"(2)   The circumstances under which the abuse or harm was inflicted on the child.

"(3)   The severity of the emotional trauma suffered by the child.

"(4)   Any history of abuse of other children by the offending parent or guardian.

"(5)   The likelihood that the child may be safely returned to the care of the offending parent or guardian within 18 months with no continuing supervision.

"(6)   Whether or not the child desires to be reunified with the offending parent or guardian."

### 2. *Section 361.5, subdivision (h)*

Why the juvenile court resorted to section 361.5, subdivision (h) is not made clear by the record. Perhaps the court did so because of the father's assertion a "best interest" evaluation was required. In any event, the juvenile court erred in relying upon this particular subpart of section 361.5 when it refused to provide the father with reunification services.[8]

Subdivision (h) is relevant only when the juvenile court assesses whether reunification services should be denied under subdivision (b)(6) of section 361.5. (§ 361.5, subd. (h).) In this connection, subdivision (b)(6) provides in relevant part that the juvenile court may decline to extend services if it finds, by clear and convincing evidence, "[t]hat the minor has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of . . . the infliction of severe physical harm by a parent or guardian, as defined in this subdivision, *and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian.*" (§ 361.5, subd. (b)(6), italics added.)

Subdivision (h) then sets out some of the factors the court is entitled to consider in "determining whether reunification services will benefit the child pursuant to paragraph (6) of subdivision (b)."

Although not stated in so many words in section 361.5, subdivision (b)(6), it appears the Legislature intended that the juvenile court make an express, on-the-record finding of sexual abuse or severe physical harm as a precondition to denying reunification under the subdivision, notwithstanding the existence of an earlier jurisdictional finding on the same subject. The language of the subdivision itself points in this direction when it provides in pertinent part that "[a] *finding of the infliction of severe physical harm, for the purposes of this subdivision,* may be based on, but is not limited to, deliberate and serious injury inflicted to or on a child's body by an act or omission of the parent or guardian, or of another individual . . . with the consent of the parent or guardian; . . . or any other torturous act or omission which would be reasonably understood to cause serious emotional damage." (§ 361.5, subd. (b)(6), italics added.)

Furthermore, subdivision (i) of section 361.5 all but states that an on-the-record finding of severe sexual abuse or severe physical harm is required, in addition to an appropriate express finding concerning the lack of benefit to the child. Subdivision (i) provides: "(i) The court shall *read into the record*

---

[8]We find no basis for a conclusion the error was invited by the father. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 301.)

*the basis for a finding* of severe sexual abuse or the infliction of severe physical harm under paragraph (6) of subdivision (b), and *shall also specify the factual findings used to determine that the provision of reunification services to the offending parent or guardian would not benefit the child.*" (Italics added.)

Here, the record does not reveal any explicit finding by the juvenile court that Rebekah suffered severe sexual abuse or severe physical harm within the scope of section 361.5, subdivision (b)(6). Having failed to make this essential preliminary determination, the juvenile court could not properly rest its decision to refuse services upon section 361.5, subdivision (b)(6).

### 3. *Section 361.5, subdivision (c)*

■ As noted above, the department argued that a no-services order was proper with respect to the father because of the juvenile court's earlier section 300, subdivision (e) jurisdictional finding. Under section 361.5, subdivisions (b)(5) and (c), the existence of such a jurisdictional finding is a proper basis for refusing to extend services to a parent who was physically abusing the child or who knew or should have known that another person was physically abusing the child.[9]

Subdivision (c) of section 361.5 allows the juvenile court to order reunification services to an offending parent, notwithstanding the existence of a section 300, subdivision (e) finding, if the court "finds that, based on competent testimony, those services are likely to prevent reabuse or continued neglect of the child or that failure to try reunification will be detrimental to the child because the child is closely and positively attached to that parent." (§ 361.5, subd. (c).) We will imply from the no-services order a finding that services were not justified under section 361.5, subdivision (e), even though the juvenile court did not appear to rely upon this statutory provision. (See *In re Jesse B.* (1992) 8 Cal.App.4th 845, 851 [10 Cal.Rptr.2d 516].) The issue on appeal is whether this implicit finding is supported by substantial evidence. (*Ibid.*)

To enable the juvenile court to determine whether to order reunification under this authorization, section 361.5, subdivision (c) in relevant part imposes upon the probation officer the obligation to "investigate the circumstances leading to the removal of the minor and advise the court whether there are circumstances which indicate that reunification is likely to be

---

[9]There is no indication in the record that the juvenile court specifically determined that Rebekah came within its jurisdiction under section 361.5, subdivision (e) because of any conduct on the part of the father. However, the father makes no claim of error on this ground.

successful or unsuccessful and whether failure to order reunification is likely to be detrimental to the child." (§ 361.5, subd. (c).) As we will explain, because the department failed to fully comply with this command, there was insufficient evidence to support the juvenile court's refusal to provide the father with services.

Under the facts presented by this case, the department had only to investigate the circumstances leading to Rebekah's removal and advise the court whether reunification was likely to be successful or unsuccessful. Because the child had been detained at an early age, there could be no legitimate claim she was closely and positively attached to her father. The failure to order reunification could therefore not conceivably have been detrimental to her under the second test of section 361.5, subdivision (c). While the department's reports demonstrate it had in fact looked into the events surrounding Rebekah's removal, it is obvious from the record that the department neither explored nor advised the court whether reunification between the father and his daughter was or was not likely to be successful. It appears the department simply overlooked the language of subdivision (c).

In recommending that the court not provide reunification services, the department cited: (1) the nature and extent of Rebekah's injuries; (2) the parents' inability to provide a reasonable explanation for how she sustained her injuries; (3) the parents' inability or unwillingness to protect her from severe physical abuse; and (4) the parents' incarceration. While these factors may have some relevance to other subjects of investigation specified by section 361.5, subdivision (c), they did not address the element of whether reunification would likely be successful or unsuccessful if ordered.

The first factor relied upon by the department, the nature and extent of Rebekah's injuries, is part and parcel of all section 300, subdivision (e) cases. By statutory definition, the child suffered severe physical abuse. The same must be said about the third factor, the parents' inability or unwillingness to protect their daughter from severe physical abuse, when, as here, the parent seeking services did not perpetrate the abuse.[10] The second factor, the parents' inability to provide a reasonable explanation for how Rebekah sustained her injuries, does not compel a conclusion one way or the other concerning the likely success of reunification services. At best, it goes to issues involving the father's credibility with respect to the circumstances which led to Rebekah's removal. Finally, the parents' incarceration, the fourth factor, does not under the circumstances disclosed by the record support a conclusion that reunification for the father would be unsuccessful

---

[10]The juvenile court specifically found Robert R. did not inflict the injuries suffered by Rebekah.

since (1) he was scheduled to be released in less than three months, and (2) there was no showing that inadequate time would remain after he was freed to make significant gains toward reunification.

Surprisingly, the department did not request a psychological evaluation concerning the father's prospects for reunification. Instead, the father voluntarily saw a psychiatrist for such purposes. In part, the psychiatrist concluded: "[t]here is no acute psychological problem that could not be addressed through reunification services." The department attacked the psychiatrist's report as, among other things, inadequate, but never attempted to call the doctor as a witness in order to examine him more thoroughly on the subject of reunification. Instead, the department apparently took the position the burden of producing evidence about the father's prospects for successful reunification was his.

We acknowledge that, in evaluating the factors identified in section 361.5, subdivision (h), the court did consider whether Robert R. would be able to protect Rebekah if 18 months of reunification services were offered. The court said:

"The likelihood that the child may be safely returned to the care of the offending parent or attending guardian within 18 months with no obtaining supervision, this is really the finding I have to focus on. This is really the central issue in this case is whether the child can go back to Robert in 18 months, I have some real concerns about this.

"Robert loves this child. I know he does, but we have to do more than love children in this world. We have to know what their needs are. We have to be able to protect them. We have to have the perception sufficient to do that. And frankly, I really have some serious questions about Robert's perception and his ability to understand and realize and have insight into people and to what's going on and into the needs of this child.

"His employment, first of all, I'm not altogether sure, based on his past employment history, he would be making a home independently supporting her. There's nothing in here to indicate that he can.

"Secondly, his insight into the character of people, other people, and into Terri, her capabilities, her serious, emotional dysfunctions is extremely limited. He continues to think of her as a warm and caring person in spite of all this and says only if he has to make a choice between her and the child, he would chose the child, which is the appropriate answer, but it doesn't show me any insight to what Terri is or any appreciation of it.

"And the fact is that if he were—did the other things that are common in reunification plans, showed appropriate parenting techniques, which I think he's perfectly capable of doing, rocking the child, holding it, loving it, feeding it, those kinds of measurable things, he could.

"He would probably do that, but the more difficult measured things, looking out for the child, protecting it from harm, making sure that she wouldn't be harmed by another woman he might be involved with himself, if he didn't reinvolve himself with Terri, providing her with an adequate home, knowing when she was sick or needed care. I have serious doubts about his ability to do that.

*"He doesn't seem to indicate the ability to do it. This is shown based on this relationship with Terri. And so frankly, while I think he might be capable of doing some of the things that might be required in the reunification plan, caring for the child, attending parenting classes, I don't think he would frankly be able to gain the insight to successfully and to independently protect this child. I don't think this is the case. This report from Dr. Terrell tells me nothing about that, that is helpful.*

"·   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

*". . . this child suffered some severe injuries which he, as a parent, should have been aware of, and that he failed—he failed to be aware of them and protect her from Terri, because he does lack total insight to what this woman is, and what she is doing to this child, and he still does."* (Italics added.)

To the extent this analysis focuses on the father's past or present imperfections, including his failure to recognize the mother's responsibility for the harm suffered by Rebekah, it ignores the possibility, acknowledged by the Legislature, that with appropriate services a parent may be able to overcome his or her deficiencies and learn to adequately care for and protect a child in the future. (§ 361.5, subd. (c).) If the causes of the dependency, including a parent's personal shortcomings, provided a viable ground for declining to offer services, the provision in subdivision (c) which permits the court to extend services to a parent who is implicated in the abuse of a child would become, as a practical matter, meaningless. The whole point of reunification is the elimination of those conditions which led to the assumption of jurisdiction by the juvenile court. (§ 362, subd. (c).) In this case, the circumstances which led to dependency consisted of the severe physical abuse of Rebekah by her mother and the father's unwillingness or inability

to prevent it; reunification services therefore must include those which are geared to equipping the father to take suitable and effective steps in the future to protect his daughter from such abuse. (§ 361.5, subd. (c).)

To the extent the juvenile court's analysis includes comment upon the father's prospective inability "to gain the insight to successfully and to independently protect this child," it is unsupported by the record. The court was correct that Dr. Terrell's report offered no help in the matter, and nothing else before the juvenile court did so either. Thus, left unanswered by the evidence was the question whether appropriately directed services could likely help the father achieve a level of understanding and perception sufficient to enable him to reunify with Rebekah. The evidentiary vacuum simply left the juvenile court to speculate on this subject.

We conclude the department did not satisfy its investigatory obligation under section 361.5, subdivision (c) because it did not inquire into or advise the court concerning the likelihood of successful reunification between Rebekah and her father. As a result, the juvenile court's order denying the father reunification services is not supported by sufficient evidence. We will therefore vacate the order terminating the father's parental rights. (*In re Rebecca H.*, *supra*, 227 Cal.App.3d at p. 846.)

We make clear that on remand the juvenile court is not compelled to order reunification services for the father. It should, however, hold a hearing, after the department has had sufficient time to conduct a full investigation in accord with the dictates of section 361.5, subdivision (c), to determine whether reunification is likely to be successful or unsuccessful and, in particular, whether the father could, with proper help, achieve a level of insight sufficient to enable him to prevent Rebekah's reabuse and a level of proficiency sufficient to enable him to competently care for his daughter. Whether the court orders services will depend upon the court's assessment of the evidence presented at the hearing. (§ 361.5, subd. (c).) If the court concludes that services should not be provided, it shall reinstate the order terminating the father's parental rights.

## DISPOSITION

The judgment (order) terminating the father's parental rights is reversed, and the matter is remanded for further proceedings consistent with this opinion. The order terminating the mother's parental rights is affirmed.

The purported appeals of both parents from the juvenile court's disposition orders as to each parent are dismissed.

Martin, Acting P. J., and Bissig, J.,* concurred.

A petition for a rehearing was denied September 16, 1994, and the petitions of both appellants and respondent for review by the Supreme Court were denied November 17, 1994.

.

---

*Judge of the Kings Superior Court sitting under assignment by the Chairperson of the Judicial Council.