Filed 9/21/20  In re C.M. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re C.M., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B305180 (Super. Ct. No. 19JV00527) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>B.V.,<br><br>  Defendant and Appellant. | |

B.V. (Mother) appeals the juvenile court's jurisdictional findings and dispositional orders regarding her son, C.M.  (Welf. & Inst. Code,[1] § 395, subd. (a)(1).)  We affirm.

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

# FACTUAL AND PROCEDURAL HISTORY

Santa Barbara County Child Welfare Services (CWS) received a referral after Mother reported to the police that C.M.'s father[2] hit him with a belt, causing welts. The father was arrested and did not arrange a place for C.M. to stay while he was in jail. CWS contacted Mother, who did not have a place for C.M. to live. CWS took C.M. into protective custody.

CWS filed an amended petition, alleging that Mother failed to protect C.M. from the father, with whom C.M. was left. (§ 300, subd. (b)(1).) The petition also alleged C.M. suffered or was at risk of suffering serious physical harm by Mother. There had been 24 child welfare referrals in the past 10 years involving C.M., including custody disputes, truancy, Mother's "chronic homelessness," the father's physical abuse, allegations that C.M.'s older brother (J.M.) sexually abused C.M., and other behavioral issues involving J.M. Of the 24 referrals, four were inconclusive, 10 were unfounded, nine were "evaluated out," and one was substantiated.

The petition also alleged that Mother's inability to provide C.M. with "food, clothing, shelter, or medical treatment" posed a substantial risk of harm to C.M. (§ 300, subd. (b)(1).) Mother had an "ongoing pattern of chronic homelessness for the past five years," and did not have a place for C.M. at the time the petition was filed. CWS staff informed Mother that she could go to a homeless shelter, but she refused. The petition further alleged that Mother had a criminal history of inflicting corporal injury on a spouse, battery, assault, and fighting in public places.

In the jurisdiction report, CWS recommended the court sustain the petition and that C.M. remain out of her care.

---

[2] C.M.'s father is not a party to this appeal.

The report noted that Mother had experienced homelessness for a significant period of time and had been unable to provide C.M. with a stable and safe place to live. CWS submitted court documents showing that Mother was evicted from her residence on several occasions. The report also stated that Mother and C.M.'s father had struggled with communication and co-parenting. There was a history of custody proceedings, physical altercations, and CWS investigations.

In the disposition report, CWS stated that Mother told the social worker that she was renting a room in Santa Maria and that her adult daughter was living with her. Mother also said J.M. visited her "regularly." The social worker visited Mother's residence, which was in a converted garage. About a week later, Mother told the social worker that she "may have to move out" because the landlord was moving.

The disposition report also noted C.M.'s father had primary custody of C.M. because Mother did not have a place to live. The report stated that Mother had "struggled with establishing stable housing and maintaining clear boundaries with individuals who are aggressive around and toward [C.M.]." Mother also "appear[ed] to have underlying mental health issues or a cognitive delay, which may have attributed to her lack of stability and her inability to protect [C.M.] from being physically hurt or being exposed to violence."

CWS recommended reunification services for Mother. Her case plan required her to maintain suitable housing and secure income through work or public assistance. It also required her to participate in a psychological evaluation and follow the resulting recommendations, and participate in services such as

3

therapy or psychiatric care to improve her "functioning, her communication skills, and develop safe boundaries."

At the jurisdiction/disposition hearing, the social worker testified that she was concerned with Mother's lack of housing stability and "boundaries with [J.M.], which is unclear if he resides with her or has regular contact with her." The social worker stated that Mother had not provided any verification of a rental agreement.

The social worker testified there were two incidents where J.M. acted aggressively towards CWS staff. J.M. was "verbally aggressive over the phone" when he was not allowed to attend a visit with C.M. During another supervised visit, Mother was not complying with the visitation guidelines and used her phone to call J.M. J.M. "became aggressive over the phone" and later appeared at the visitation site. He acted aggressively toward CWS staff and refused to leave. CWS staff contacted the police.

There were also incidents of J.M.'s violent behavior against C.M.'s father. The social worker described one incident where J.M. assaulted C.M.'s father while C.M. was present. The incident led to a criminal charge and a protective order against J.M. There were other incidents of J.M.'s aggression causing Mother and J.M. to be evicted from apartments. There was also an allegation that J.M. sexually molested C.M.

The social worker testified that Mother had a night shift job, five days a week. Mother planned for J.M. and her daughter to take care of C.M. when she was at work, but she also stated that her daughter attended school at night.

During her testimony, Mother acknowledged that J.M. became verbally aggressive with CWS staff during a

4

supervised visit and said he had a "very ugly character." When asked about her plans to protect C.M. from J.M., Mother said she "talked to [J.M.]," but did not have any plans. Mother wanted the court to order J.M. to attend anger management classes and see a therapist.

The juvenile court sustained the allegations in the petition. The court stated that "it's more than just providing a home for [C.M.], adequate food, clothing, shelter, medical treatment, but it appears to the Court that she's also unable to protect him from being exposed or perhaps even the victim of violence by his older brother."

The court adopted CWS's recommendation regarding reunification services and ordered a psychological evaluation for Mother. It also ordered parenting classes.

## DISCUSSION

### *Jurisdictional Findings*

Mother argues the juvenile court erred when it found true the allegations in the petition. Her contention is without merit.

Jurisdiction is appropriate under section 300, subdivision (b)(1), where there is substantial evidence that "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment." We review the juvenile court's jurisdictional findings for substantial evidence. (*In re R.T.* (2017) 3 Cal.5th 622, 633.) We review the evidence in the light most favorable to the court's findings and

5

draw all reasonable inferences in support of those findings. (*Ibid.*)

Substantial evidence supports the jurisdictional findings. The evidence shows that Mother struggled with protecting C.M. from J.M., who had a history of violent and aggressive behavior. Mother was unsuccessful in controlling his violent behavior. The social worker described two instances in which J.M. acted aggressively toward CWS staff. One incident occurred during a visit with C.M. and CWS staff was forced to contact the police. C.M. was also present when J.M. assaulted C.M.'s father. Mother did not have any plans to prevent J.M.'s violent behavior. Instead, she planned for J.M. to take care of C.M. while she was at work.

The evidence also shows that Mother "struggled with establishing stable housing" for C.M. She had a history of homelessness and was evicted from residences multiple times in the past. Mother did not have a place for C.M. to live when the petition was filed. Although she was renting a room in Santa Maria at the time of the disposition hearing, Mother did not have verification of a rental agreement. She also told the social worker that she "may have to move out" because her landlord was moving.

Mother contends that her poverty and temporary homelessness were insufficient grounds to sustain the petition. (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1402.) However, the record reflects Mother's housing instability was "chronic" and was not due solely to her limited financial resources–J.M.'s

behavior also led to evictions. Moreover, CWS recommended that Mother go to a homeless shelter, but Mother refused.[3]

### *Dispositional Order*

Mother contends the juvenile court erred when it made the dispositional order because the order did not relate to the allegations in the petition and was not tailored to her. She challenges the court's order for a psychological evaluation and parenting classes. We disagree.

At the dispositional hearing, the juvenile court must order child welfare services for the parent to facilitate family reunification. (§ 361.5, subd. (a).) "The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion." (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.) We review the court's order for abuse of discretion. (*Ibid.*)

"The reunification plan "'must be appropriate for each family and be based on the unique facts relating to that family.'" [Citation.]" (*In re Christopher H.*, *supra*, 50 Cal.App.4th at p. 1006.) "The department must offer services designed to remedy the problems leading to the loss of custody." (*Id.* at pp. 1006-1007.) But when the juvenile court "is aware of other deficiencies that may impede the parent's ability to reunify with [their] child, the court may address them in the reunification plan," even if those issues were not direct causes of the initial detention. (*Id.* at p. 1008; see *ibid.* [drug and alcohol testing

---

[3] To the extent Mother argues her refusal to go to homeless shelters was due to her fear of the coronavirus pandemic, Mother did not make this argument in the court below. (*People v. Williams* (1999) 20 Cal.4th 119, 130.) It is therefore forfeited.

order was not an abuse of discretion based on the evidence, even though the appellant's substance abuse had "not yet affected his ability to care" for his child].)

The juvenile court did not abuse its discretion when it ordered a psychological evaluation and parenting classes. CWS noted that Mother needed improvement in her communication skills, maintaining safe boundaries, and gaining stability. Specifically, the jurisdiction and disposition reports state that Mother had ongoing communication and co-parenting issues with C.M.'s father, which had led to custody disputes, physical altercations, and child welfare investigations. The reports also detail multiple instances of violent behavior involving J.M., but Mother did not have a plan to protect C.M. from that behavior. Mother also had a history of violent behavior, including spousal abuse. Based on these circumstances, the juvenile court properly ordered parenting classes and a psychological evaluation.

Mother contends the juvenile court abused its discretion because there was insufficient evidence that she had mental health issues. However, "[i]t would be unreasonable to forbid entry of an evaluation order unless the parent possessed a documented history of mental health difficulties or treatment." (*In re Rebecca H.* (1991) 227 Cal.App.3d 825, 840.) "A parent might well have a problem of the kind contemplated by the section without any prior discovery or diagnosis. Where, as in this case, the jurisdictional finding is not based on a parent's mental disability, the juvenile court may rightly look to the circumstances underlying the dependency and the evidence of the parent's conduct in deciding whether to order one or more mental health evaluations. [¶] In doing so, the juvenile court will be

guided by its best judgment under all the circumstances." (*Id*. at pp. 840-841.)  There was no abuse of discretion.

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED.</u>

                                   TANGEMAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant.

Michael C. Ghizzoni, County Counsel, Lisa A. Rothstein, Deputy County Counsel, for Plaintiff and Respondent.