Filed 6/13/23 In re E.S. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re E.S., a Person Coming Under the Juvenile Court Law. | B318656 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 21CCJP05141A) |
| Plaintiff and Respondent, | |
| v. | |
| E.P., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Charles Q. Clay, Judge. Conditionally affirmed with directions.

Linda J. Conrad, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

––––––––––––––––––––

After the juvenile court declared his son a dependent under Welfare and Institutions Code section 300, subdivisions (a)(1) and (b),[1] and removed the child from parental custody, father appealed. He contends the court abused its discretion when it ordered him to submit to drug testing and undergo a psychiatric assessment as part of a reunification case plan. He also contends the court erroneously failed to ensure compliance with the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California statutes (Welf. & Inst. Code, § 224 et seq.). The Los Angeles County Department of Children and Family Services (the Department) contends the challenged portions of father's case plan were within the court's discretion. It does not oppose a remand with directions to comply with ICWA.

We conditionally affirm the disposition order solely for the juvenile court to ensure compliance with ICWA and related California statutes.

––––––––––––––––––––

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

## BACKGROUND

Father and mother[2] have one son, born December 2019. The parents' relationship has been volatile, with a history of serious domestic violence. Father is not challenging the court's February 2022 order declaring his son a dependent under section 300, subdivisions (a)(1) and (b), based on identical allegations that expressly described three violent incidents:  in January or February 2021, mother struck father in the head with her fist, and father struck mother; in August 2021, mother and father struggled over mother's phone, causing mother to fall and sustain bruising to her back and shoulder; and in October 2021, father struck mother's face with his fist causing a laceration and bleeding on her lip.  Likewise, father does not challenge the disposition orders removing the child from parental custody, and entering a restraining order protecting mother from father.

The Department received a referral in October 2021, alleging that the child was a victim of emotional abuse and general neglect.  The referral included concerns about the parents' history of domestic violence, and stated mother and father both use marijuana and mother may also be using other substances.

On October 20, 2021, a social worker made an unannounced visit to paternal grandmother's home, where father and son were residing.  In father's first interaction with the social worker, he "presented himself in an aggressive disrespectful manner," cursing, raising his voice and pointing his finger at the social worker while the child was present.  Father's aggressive

---

[2] Mother is not a party to this appeal.

behavior continued, as he stated he would "sock" the social worker to protect his son, and began recording the social worker with his phone as he moved around the home looking for his clothing so he could leave for work. After the social worker was able to de-escalate the situation, father broke down and cried, apologizing and telling the social worker she was nice.

Paternal grandmother reported that mother and father have verbal altercations frequently, and she has observed the child crying while mother and father are verbally fighting. Mother and father do not stop arguing even when the child screams. Referring to physical violence, paternal grandmother said mother and father "fight like two men." She saw mother hit father in the head with her fist in early 2021 in an incident where the child was present and to which the police responded. Father has told paternal grandmother that he also hits mother, because she hits him. Father has anger management problems and is aggressive towards everyone, including herself. Father has not tried hitting paternal grandmother, but he raises his voice at her and uses foul language. Paternal grandmother reported she takes the child to medical appointments, because the parents do not have the patience to do so. At the last appointment, paternal grandmother and father learned the child was overweight, and father became aggressive towards staff, requiring intervention by many staff.

Paternal aunt also reported father has anger management problems, which started when he started dating mother. Paternal aunt confirmed father is disrespectful towards people, raising his voice and using foul language, including towards paternal grandmother, who cares for the child because mother and father are not mentally stable.

Father denied any substance abuse issues, but acknowledged smoking marijuana. He smokes away from the home while the child is under paternal grandmother's supervision. Paternal grandmother reported seeing mother and father smoking some distance away from her home, and she would be taking care of the child. Mother reported father smoked marijuana in the past, but she did not know if father was still using marijuana.

The social worker observed that the child had separation anxiety and cried when father left for work. Paternal grandmother reported that the child struggles with staying alone and is afraid that paternal grandmother will leave.

Father and mother have alternated between separating and reconciling numerous times. The Department had investigated a prior referral involving domestic violence in December 2020, involving mother punching father while holding the child. Father declined an emergency protective order, and the matter was closed as inconclusive. During the October 2021 investigation that led to the current case, paternal grandmother told the social worker during her initial interview that she was sick of the constant fighting between mother and father, that they were both crazy, and they would take a break for a week and then get back together. Despite father previously seeking a restraining order against mother on at least two separate occasions, mother and father would continue to spend time together and fight.

Father's attitude towards mother and his communications with the Department were unpredictable, swinging from one position to another without explanation. Although mother and father had previously agreed to an order giving mother partial

custody, father told the social worker he wanted full custody of his son, and he was willing to drug test, participate in therapy, and do everything else the Department wanted him to do to obtain the Department's help. After the Department's initial interviews, father sent the social worker a text message stating that he and mother wanted to be a family and would try with the Department's help. He sent a second text the following day, accusing the social worker of upending his family's life like a tornado just as things were calming down.

The Department detained the child in paternal grandmother's home on November 3, 2021. The detention report noted that "father's overall behaviors have caused great concern to the Department," and he "appears to be emotionally unstable and unable to regulate his emotions" in the child's presence.

At the detention hearing on November 10, 2021, father asked for the child to be released to his care, acknowledging that the family needs help and stating he was willing to participate in programs. The court ordered the child to remain detained from parental custody.

In December 2021, father objected to paternal grandmother's request to travel to Guatemala with the child. Father raised concerns about criminal activity and limited access to health resources, stating that if the child died of COVID-19 or was harmed or kidnapped, he would sue the Department and "'kill'" paternal grandmother. Father asked to travel with paternal grandmother, stating he is a "'gang member'" and would be able to protect his child. The court granted paternal grandmother's request over father's objection.

The Department recommended reunification services for both parents. For father, it recommended a domestic violence

program for both victims and perpetrators; a psychiatric evaluation; eight random drug tests, with directions to the Department to walk the matter onto calendar if father's marijuana levels increase or he tests positive for any other substance; age appropriate parent education; and individual counseling to address case issues.

On January 19, 2022, the court continued the adjudication hearing to give the Department time to assess the parents' participation in programs and whether father could return to paternal grandmother's home. Mother sought a restraining order against father, and father objected, proposing that the court enter a stay-away order instead. The court granted a temporary restraining order to be in place until a February 23, 2022 adjudication hearing, when the court would also take up mother's request for a permanent restraining order.

At the February 23, 2022 jurisdiction and disposition hearing, father did not present any evidence. His counsel argued against removal, asking for the child to be returned to father's custody at paternal grandmother's home instead. Father also objected to being required to submit to drug testing and a psychiatric evaluation. The court sustained the petition allegations under section 300, subdivision (a)(1) and (b), which, specifically referenced three domestic violence incidents in January or February, August, and October of 2021. For reunification services, the court ordered both parents to take domestic violence classes, individual counseling to address case issues, and age appropriate parenting classes. In addition, the court ordered eight on demand or random drug tests for both parents, with directions to the Department to walk on a request for additional orders if either parent's tests showed an increase in

marijuana levels or came back positive for other substances. The court also ordered both parents to be assessed for mental health counseling, which may include a psychiatric evaluation, and both parents to take all prescribed psychotropic medications. The court granted a three year restraining order protecting mother against father.

Father timely appealed.

## DISCUSSION

On appeal, father does not raise any issues with the court's jurisdictional order or findings, or with the entry of the restraining order against him. He challenges only aspects of the court's disposition order and the court's failure to ensure compliance with ICWA.

*Disposition orders*

Father contends that without evidence of substance abuse or psychiatric issues, the juvenile court abused its discretion by ordering father to drug test and undergo a psychiatric evaluation. We disagree, because the record contains sufficient evidence to support the court's exercise of its discretionary authority to fashion a reunification plan designed to identify and eliminate the conditions that led to the dependency.

Under section 362, subdivision (a), "the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child." When determining the dispositional orders that would be in the children's best interest, the juvenile court is not limited to the

sustained allegations in the petition, but may consider the evidence as a whole. (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.) "In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order." (*Ibid.*) " 'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion.' " (*Ibid.*)

When making its dispositional order, the court is not limited to consideration of allegations in the petition, but should consider all the information contained in the social study of the child made by the assigned social worker. (§ 358, subd. (b)(1).)[3] The court is expected to have before it "family history and behavior" contained in the reports. (*In re Rodger H.* (1991) 228 Cal.App.3d 1174, 1183.) These facts may be considered in making dispositional orders. (*In re Briana V., supra,* 236 Cal.App.4th at p. 311.)

The information from paternal grandmother and paternal aunt, as well as the social worker's own observations, consistently established that father had trouble regulating his emotions and was prone to verbal aggression. It was not unreasonable for the court to order drug testing and a psychological evaluation in order to identify and address the possible factors led to the

---

[3] Section 358, subdivision (b)(1) provides in relevant part that before making its disposition orders, the juvenile court shall receive into evidence, "the social study of the child made by the social worker."

underlying dependency proceeding, even those factors outside of the sustained allegations concerning domestic violence.

Father admitted to smoking marijuana, and he agreed to drug testing early in the dependency. While it is true that father's marijuana use was not the basis for the dependency, the fact that father had not completed any drug testing before the disposition hearing, despite agreeing to do so, strongly supports the conclusion that the order for eight random drug tests fell within the court's discretion to fashion an order protective of the child's best interests.

Where the jurisdictional finding is not based on a parent's mental disability, the juvenile court may look to the circumstances underlying the dependency case and the evidence of the parent's conduct in determining whether to order a mental health evaluation. (*In re Rebecca H.* (1991) 227 Cal.App.3d 825, 840.) Father's mood swings and his tendency towards verbal aggression form a reasonable basis for the juvenile court to conclude that the ordered mental health counseling and a possible psychiatric assessment would assist the Department in tailoring its services to father's needs, helping him in his efforts to reunify with his son. The order for mental health counseling and evaluation is not an abuse of the court's discretion.

*ICWA*

Father contends the court erred in finding ICWA inapplicable when there was no evidence the Department had asked extended family members about the possibility of Indian ancestry. Acknowledging its affirmative and continuing duty under ICWA and related state law, the Department does not

10

oppose a remand with directions to ask known relatives about possible Indian ancestry.

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.)  Both ICWA and California law define an " 'Indian child' " as a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); § 224.1, subds. (a) & (b); see *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 783.)

California statutory law incorporates the requirements of ICWA and imposes some additional requirements as well. (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741–742.)  "The Department's first-step inquiry duty under ICWA and state law was broader, requiring it also to interview, among others, extended family members and others who had an interest in the child." (*In re H.V.* (2022) 75 Cal.App.5th 433, 438; see § 224.2, subd. (b).)  Federal regulations explain that the term "extended family member is defined by the law or custom of the Indian child's Tribe or, in the absence of such law or custom, is a person who has reached age 18 and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 C.F.R. § 23.2 (2017).)  When there is "reason to believe that an Indian child is involved in a

11

proceeding," further inquiry is required. (§ 224.2, subd. (e); *In re T.G.* (2020) 58 Cal.App.5th 275, 290, fn. 14.)

"We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence." (*In re H.V., supra,* 75 Cal.App.5th at p. 438.)

Mother and father both denied Indian ancestry when asked and did not claim any Indian ancestry on the ICWA-20 forms filed at the November 10, 2021 detention hearing. The Court reviewed the ICWA-20 forms and found ICWA inapplicable, although we note for the record that the forms were not signed by either parent. Although the Department spoke to paternal grandmother, paternal aunt, and maternal grandmother, there is no evidence anyone asked these relatives whether the child had Indian ancestry.

We continue to conclude that in the absence of any evidence that the Department asked available extended family members about the possibility of Indian ancestry, it is prejudicial error for the trial court to find ICWA inapplicable. (See, e.g., *In re H.V., supra,* 75 Cal.App.5th at p. 438 [prejudicial error when Department fails to discharge its first step duty of inquiry]; *In re Benjamin M., supra,* 70 Cal.App.5th at p. 741 [court must ask each participant in child custody proceeding].) "By requiring the Department to inquire of a child's extended family members as to the child's possible Indian ancestry, the Legislature determined that inquiry of the parents alone is not sufficient." (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 431.)

## DISPOSITION

The February 23, 2022 disposition order is conditionally affirmed and remanded to the juvenile court for the limited purpose of ensuring compliance with the inquiry provisions of Welfare and Institutions Code section 224.2 and, if necessary, the notice provisions of section 224.3. The juvenile court shall order that the Department complete an inquiry into son's Indian ancestry by making reasonable efforts to interview available extended family members, including paternal grandmother, paternal aunt, and maternal grandmother. If the juvenile court issues an order determining that ICWA does not apply, the dispositional order shall remain in effect. If the court determines ICWA applies, it shall vacate the dispositional order and proceed in accordance with ICWA and related state law.

NOT TO BE PUBLISHED.

MOOR, J.

I concur:

KIM, J.

In re E.P.S.
B318656


BAKER, Acting P. J., Concurring in Part and Dissenting in Part


I agree the juvenile court did not exceed the bounds of its discretion in ordering E.P. to submit to eight drug tests and a mental health counseling assessment that may include a psychiatric evaluation. I disagree with the majority's conclusion that no substantial evidence supports the juvenile court's Indian Child Welfare Act-related findings. (See, e.g., *In re A.C.* (2022) 86 Cal.App.5th 130, 132 (dis. opn. of Baker, J.); *In re H.V., supra*, 75 Cal.App.5th 433, 439 (dis. opn. of Baker, J.).) I would accordingly affirm the juvenile court's orders in full.


BAKER, Acting P. J.