Filed 8/27/24  C.W. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| C.W.,<br><br>   Petitioner,<br><br>   v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>   Respondent;<br><br>KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>   Real Party in Interest. | F088225<br><br>(Super. Ct. No. JD144613-00)<br><br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Susan M. Gill, Judge.

Law Office of David Duket and David Duket for Petitioner.

No appearance for Respondent.

Margo A. Raison, County Counsel, and Elizabeth M. Giesick, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Franson, J. and Smith, J.

In this petition for extraordinary writ, C.W. (mother), challenges the juvenile court's dispositional order denying her reunification services based on the finding that she suffers from a mental illness that renders her incapable of utilizing those services. (Welf. & Inst. Code, § 361.5, subd. (b)(2).)[1] Mother contends the Kern County Department of Human Services (department) did not provide her with reasonable services as it failed to consider mother's developmental disabilities from the inception of the case when referring her to classes, and when it failed to provide her with regular and consistent visitation. We disagree and affirm the challenged findings and orders.

## STATEMENT OF THE FACTS AND CASE

On April 27, 2023, the department filed a section 300 petition alleging mother failed to protect four-year-old O.I. from being physically abused by mother's husband (husband), who was also the father of mother's youngest child, D.W. O.I., who is autistic with limited speech, identified husband as the one who hit and grabbed him. O.I. was observed earlier in the month and the previous month with bruises and scratches on his face and body. Husband admitted grabbing O.I. because he was not listening, and admitted anger issues and feeling overwhelmed and overstimulated.

The petition alleged mother had a history of failing to protect her children from the men in her life. In 2018, O.I. and an older half sibling, H.M., were physically abused by O.I.'s father. O.I. and H.M. were removed from mother's care at or near O.I.'s birth. The children were released to mother's care with nondependent wrap services. Mother then released H.M. to maternal grandmother and voluntary family maintenance services were ordered for O.I. The case was closed as "partially successful."

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

2.

The petition alleged further that H.M. had also been abused and neglected in 2013 by his own father. At that time, mother threatened to harm H.M. and kill herself. H.M. was removed from mother and returned in May 2015, and jurisdiction dismissed.

The detention report filed by the department chronicled the very lengthy departmental history of mother and various men in her life dating back to 2013, and that, despite prior counseling efforts, "[s]ervices are not available to prevent the need for further detention." Mother had been a client of Kern Regional Center but dropped services as she felt it did not help much. Between 2013 and 2018, mother had, at various times, been ordered to participate in counseling for parenting/neglect and mental health and had daily help with supportive living staff. It was consistently noted that mother was developmentally delayed. In 2018, it was noted that mother was provided education on feeding cues and was unable to comprehend the information given.

The recommendation of the department was that mother could be referred to services which would facilitate the return of the children to the home including Henrietta Weil Memorial Child Guidance (Child Guidance), Kern County Mental Health, and Alliance Against Family Violence. The report stated that mother would "make application for these services and the assigned social worker will assist in this action."

The detention hearing was held on May 2 and 3, 2023. O.I. and D.W. (together, the children) were detained. Visits were ordered for mother. Recommendations of the department for a voluntary case plan of counseling on the issues of child neglect and learning to protect were adopted. Jurisdiction and disposition hearings were scheduled for June 30, 2023.

At least three ex parte hearings were held in May and June 2023, where complaints were lodged by the parents about missed and cancelled visits. The department prepared a memo identifying the missed visits due to scheduling conflicts with caregivers and lack of transportation and supervision. The memo included a plan to make up those visits.

In its initial jurisdiction report dated June 26, 2023, the department recommended the juvenile court appoint two psychologists to assess whether mother could benefit from services. Mother had been appointed a guardian ad litem (GAL) and she was receiving in-home supportive services to assist her daily activities. The report stated, "mother has failed to protect her children from physical abuse on many occasions and it is unclear as to her ability to protect her children."

In a supplemental report filed on August 31, 2023, the department chronicled visits of mother and husband with O.I., which included instances of husband antagonizing, mocking, pushing, and kicking O.I., causing him to be fearful of husband and to scream. The department requested that husband have no further contact with O.I.

In another supplemental report dated October 4, 2023, the department stated that mother's initial voluntary family reunification plan included child neglect counseling, failure to protect from physical abuse counseling, and visitation. Mother enrolled in learning to protect class on May 8, 2023, and had a start date of May 16, 2023. The report recommended mother complete two psychological evaluations to see which services would best benefit her.

On October 9, 2023, the juvenile court ordered mother to undergo a psychological evaluation with Dr. Michael Musacco to determine whether she could benefit from reunification services and, if so, what type of services would be beneficial. The contested jurisdiction and disposition hearing was continued to November 1, 2023.

In a supplemental report for the now January 18, 2024, upcoming disposition hearing, the department detailed the results of mother's psychological evaluation done by Dr. Musacco on October 24, 2023, which offered the diagnosis of mild intellectual disability, a chronic and lifelong condition resulting in deficits in intelligence and adaptive functioning. The evaluation noted mother had attended parenting and neglect classes, but continued to insist that neither she nor husband did anything wrong to lead to the removal of her children. The evaluation stated there are no medications, treatments,

4.

and classes to improve a person's intellect, and opined that the children could not be safely returned to mother's care.

On October 31, 2023, the department received a monthly progress report from mother's learning to protect class, which indicated that she attended 22 out of 26 classes with three excused absences. The report indicated that mother "participates in group discussions and has a good level of participation." She was expected to complete the program in November 2023. She also completed a counseling assessment for the learning to protect program on September 11, 2023, and completed eight out of 10 required sessions. "It was reported that she established therapeutic goals and presented as being attentive to reaching those goals."

After numerous delays, the jurisdiction hearing was held on March 15, 2024, at which time the allegations of the petition were found true. The juvenile court ordered a second psychological evaluation, this time by Dr. Carol Matthews, for mother, at the department's request, to determine if she would benefit from reunification services and, if so, what type of services would be beneficial. A contested disposition hearing was continued to May 2, 2024, to allow for completion of the evaluation.

Dr. Matthews, the second evaluator to conduct a psychological evaluation of mother, also opined that no services could be offered mother which would enable the children to be safely returned to her care. The report dated April 13, 2024, noted mother's significant CPS history for general neglect, physical abuse, and failure to protect, described as "a habitual pattern even though she has participated in services" and received in-home supportive living services. This, coupled with mother's cognitive delay, made it unlikely mother could benefit from reunification services within the required timeline.

The department's dispositional report dated May 1, 2024, agreed that mother was owed 21 hours of visitation with the children and was in the process of making up those hours, some of those visits had already occurred. In its dispositional report, the

department recommended that the juvenile court bypass mother for family reunification services under section 361.5, subdivision (b)(2), as two psychological professionals opined that she could not benefit from such services.

The contested disposition hearing was finally held on June 13, 2024; the department submitted on the reports. Mother's counsel called Dr. Musacco, the first evaluator, who testified that he concluded that he was aware of no services that would help mother reunify, due to her intellectual disability which was not amenable to improvement or substantial change. Dr. Musacco testified that mother essentially functions as a 12 year old with peaks and valleys and, given the case circumstances, should not be in charge of a two year old.

Dr. Musacco explained that mother's case had "a lot of moving parts," noting husband, "who has agency of his own," and the children, who both had "complex needs." Dr. Musacco opined that what would be necessary for mother "would almost be like a full-time supervision thing, where there's somebody kind of there … most of the time there's somebody there that's able to look over to ensure that the children's needs are being adequately cared for." Dr. Musacco testified that caring for a child with special needs, "that's higher order difficulty" and "having somebody with an intellectual disability negotiate those challenges would be difficult in any circumstance."

When asked what type of services he might recommend for mother, "focu[]sing on her alone" and how she could protect the children from abuse, Dr. Musacco stated that that was particularly difficult in mother's case as she insisted that there had been "no mistakes" and that "nothing had been done wrong" in her and husband's caring for the children.

On cross-examination, the children's counsel asked if mother had been given "remedial type parenting classes … to [her] level," would that give her an opportunity to reunify with the children "down the road." Dr. Musacco stated that he would "give it a

shot" and it "would be worth the effort," but he did not know how successful the outcome would be.

Counsel for the department questioned Dr. Musacco about what type of programs mother could participate in that might lead to the return of the children by the "end of October" 2024.[2] Dr. Musacco opined that classes alone would not allow for sufficient change, but mother would also need "full-time shadowing assistance." When pressed, Dr. Musacco did not think it reasonable that "everything will be fine by October." When counsel for the department asked if Dr. Musacco had changed his opinion since he wrote his report, he replied that, when he wrote his report, he had been "of the understanding that the parents had been provided with parenting/neglect or abuse classes that were provided at a remedial level." Dr. Musacco testified that he thought such classes were provided through Child Guidance.

The juvenile court directed Dr. Musacco to look at the exhibits provided (Exhs. A & A.1),[3] described by the juvenile court as "progress reports" for mother and husband and asked, "Is there anything about those progress reports that suggests to you that the parents were in a class that was above their level of comprehension?" Dr. Musacco answered, "No." The court asked whether the fact that mother received a progress report that indicated she was participating, "if not fully, but at least participating in getting some passing scores, if you will, doesn't that suggest that [she was] being taught at [her] level?" Dr. Musacco responded, "If they weren't, there was no reference to that. And if there was a concern for that, I would certainly expect that to be included."

---

**2**     Likely referring to the timeline allowed for receiving reunification services in this case.

**3**     These exhibits do not appear to be a part of the record provided.

Dr. Musacco stated that the key to his opinion was mother's denial that there was a problem with husband's behavior and opined that, because she did not see a problem, it was less likely that she would be able to address the issue.

Mother's counsel also called department social worker Keishaun Craig, who had been assigned to mother's dependency case from the beginning and recommended participating in a voluntary case plan, which consisted of parenting/child neglect and failure to protect from abuse classes. Craig testified that she and her supervisor developed and referred mother to resources for parenting and learning to protect classes for her initial case plan. Mother had had assistance helping her get enrolled in the classes she needed. The social worker was not aware of other classes that mother could be referred to, which was why a psychological evaluation was recommended.

In argument following testimony, children's counsel argued that, based on Dr. Musacco's testimony, mother should be granted reunification services specifically developed for her level of intellect, but acknowledged that the outcome was clearly not certain.

Counsel for the department argued that the department offered mother services to help her reunify with her children and, because it knew of mother's disability and past history, requested the psychological evaluations to help it further address the issues raised. The request for the evaluations was to determine what specific help could be provided mother, but the evaluators' responses were that there were no services or classes that could benefit or allow mother to reunify with her children within the timeline.

Mother's counsel argued that the failure to initially send mother to classes geared toward her level of intellect and the department's difficulties with visitation constituted lack of reasonable services. Counsel noted Dr. Musacco's testimony that counseling specifically tailored to mother's intellect was feasible.

The juvenile court, in its ruling, stated:

"I know Dr. Musacco's testimony today kind of took a turn at the end, when he said, especially in response to [children's counsel], that yes, it would be fair to see what they could do with services and so forth. But the bottom line is, since October, the Department has had Dr. Musacco's opinion that there's nothing that could be done to make mother in a position where she could protect these children or reunify successfully. And today, Dr. Musacco testified that his conclusion was that no services, not remedial services, not regular services, but that no services would be successful in reunifying the mother because of her intellectual apparent impairment, her learning intelligence, adaptive functioning, she's not amenable to improvement or substantial change. You can't treat that with medication or counseling to improve the level of functioning. I'm not quoting him, … [b]ut that's essentially what he said today. [¶] … [¶]

"And even at the end when he was asked … about remedial services and so forth, yes that would have been better that would have been ideal but the bottom line is, she's not going to benefit."

The juvenile court further found that the department had provided reasonable services because the social worker had relied on the opinion of two professionals that mother could not benefit from reunification services due to her intellectual disability, especially since she never acknowledged that there was an issue with how she and husband parented. The juvenile court adjudged the children dependent children. Mother was bypassed for reunification services under section 361.5, subdivision (b)(2). A section 366.26 permanency hearing as to I.O. was set for October 7, 2024.

Mother filed a writ petition, arguing that the juvenile court erred in finding the department had provided reasonable services because the social worker did not consider mother's intellectual disability in providing initial services and because the department missed scheduling some visitation with mother.

## DISCUSSION

*Denial of Reunification Services*

Dependency cases carry a presumption that parents will receive family reunification services. (§ 361.5, subd. (a).) The presumption "implements the law's strong preference for maintaining the family relationship if at all possible." (*In re Baby*

*Boy H.* (1998) 63 Cal.App.4th 470, 474 (*Baby Boy H.*); see § 202, subd. (a) ["reunification of the minor with his or her family shall be a primary objective"].) Reunification services are designed "to eliminate the conditions leading to loss of custody and facilitate reunification of parent and child." (*Baby Boy H.*, at p. 478.)

Section 361.5, subdivision (b) expresses "a legislative determination that in certain situations, attempts to facilitate reunification do not serve and protect the child's interests." (*Baby Boy H.*, *supra*, 63 Cal.App.4th at p. 474.) This may be because "the delay attributable to the provision of reunification services would be more detrimental to the minor than discounting the competing goal of family preservation" (*In re T.G.* (2015) 242 Cal.App.4th 976, 986) or because "it may be fruitless to provide reunification services under certain circumstances." (*In re Rebecca H.* (1991) 227 Cal.App.3d 825, 837.) The statutory section authorizing denial of reunification services are sometimes referred to as " 'bypass' " provisions. (*T.G.*, at p. 986.)

The bypass provision at issue here, section 361.5, subdivision (b)(2), states that reunification services need not be provided to a parent when the court finds by clear and convincing evidence that the parent "is suffering from a mental disability … that renders the parent … incapable of utilizing those services." The section incorporates the Family Code's definition of mental disability as "a mental incapacity or disorder that renders the parent or parents unable to care for and control the child adequately," as determined by two qualified experts. (Fam. Code, § 7827, subd. (a); *id.,* subd. (c).) The statute further provides that when a parent is alleged under section 361.5, subdivision (b)(2) to be incapable of utilizing services due to mental disability, "the court shall order reunification services unless competent evidence from mental health professionals establishes that, even with the provision of services, the parent is unlikely to be capable of adequately caring for the child within the time limits specified in subdivision (a)." (§ 361.5, subd. (c)(1).)

The bypass of mother's reunification services pursuant to section 361.5, subdivision (b)(2) thus required findings supported by clear and convincing evidence of a mental disability that rendered mother (1) unable to care for and control minor, as determined by two qualified psychologists, and (2) incapable of utilizing reunification services, as well as evidence from competent mental health professionals that, even with services, mother would be unlikely to be capable of adequately caring for minor within the statutory time limit. (§ 361.5, subds. (b)(2), (c); Fam. Code, § 7827, subds. (a), (c).) Upon application of the bypass provision, "the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources." (*Baby Boy H.*, *supra*, 63 Cal.App.4th at p. 478.)

At the department's request, the juvenile court ordered two psychological evaluations of mother. Mother is not contesting the ordering of the psychological evaluations, but instead argues that, because of her history with the department and its knowledge of her developmental disabilities, the department did not provide her with reasonable services at the inception of the case, nor later when her disability was verified by the psychological evaluations.

We review the juvenile court's reasonable services finding for substantial evidence, " 'keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence.' " (*In re I.R.* (2021) 61 Cal.App.5th 510, 520; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005.) Because the juvenile court was required to find that reasonable services had been offered by clear and convincing evidence (§ 366.21, subd. (e)(8)), " '[w]e review the record in the light most favorable to the [juvenile] court's order to determine whether there is substantial evidence from which a reasonable trier of fact could make the necessary findings *based on the clear and convincing evidence standard*.' " (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1239, disapproved on other grounds in *Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 631, fn. 8.)

"Although the statute does not define 'reasonable services,' the Courts of Appeal have generally held that, to support a finding that services were reasonable, 'the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult ….' (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414, italics omitted.)" (*Michael G. v. Superior Court*, *supra*, 14 Cal.5th at p. 625, fn. 6.)  Such services "may, depending on the case, include evaluations and assessments, counseling, parent education, substance abuse treatment and testing, and other forms of assistance."  (*Id*. at p. 624.)

If a parent or guardian has a mental illness or a developmental disability, that condition "must be the 'starting point' for a family reunification plan which should be tailored to accommodate their unique needs." (*Patricia W. v. Superior Court* (2016) 244 Cal.App.4th 397, 420, 422 [where mother's mental illness led to child's detention, the social services agency "was required, first, to identify mother's mental health issues and provide services designed to enable her to obtain appropriate medication and treatment that would allow her to safely parent [her child]"]; *In re K.C.* (2012) 212 Cal.App.4th 323, 331 [father was not provided with reasonable services where he was never offered psychotropic medication to treat his diagnosed mental illness]; *In re Victoria M.* (1989) 207 Cal.App.3d 1317, 1320, 1330 [services offered to developmentally disabled mother were not reasonable because they were not tailored to her special needs].)  " 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' " (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 692, quoting *In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)

In the present case, mother contends that substantial evidence does not support the reasonable services finding made at disposition because the department did not accommodate mother's developmental disability in providing her with services.

We conclude that substantial evidence supports the juvenile court's finding at disposition that mother was provided reasonable services. The evidence before the court was that mother was referred to classes at Child Guidance; she was enrolled in those classes and was receiving positive comments from the counselor regarding attendance, receptivity, compliance, and knowledge of abusive behavior. Per Dr. Musacco's testimony, when asked about the exhibits from Child Guidance, nothing about the classes mother was participating in suggested that she was in a class above her comprehension. Further, indicators on the exhibits from Child Guidance suggest that mother was being taught at her level because there was no reference to any concern or to a suggestion that she should be involved in a different curriculum. There was no evidence that the counselor had concerns for mother's intellectual ability or comprehension, suggesting that the curriculum was already modified for mother or that she did not need a modification.

The case history points to mother having a developmental disability and her repeated history of not protecting her children from men in her life. In the current case, she continued to deny that there were issues regarding husband's behavior toward O.I. The entire premise behind the social worker's request for psychological evaluations of mother was because the department was at a loss as to what else they could do for mother.

Mother also argues that the social worker did not consider her developmental disability because the case plan was not modified once Dr. Musacco issued his evaluation. However, the evaluation very clearly stated that there were no services that could be offered mother to help her successfully reunify. It was for this reason the juvenile court ordered a second evaluation, which resulted in the same opinion.

13.

On this record, we cannot conclude that the juvenile court erred in finding that mother had been offered reasonable services. With the benefit of hindsight, it appears that mother may have benefited from additional or different reunification services. That is not the standard, however. To the contrary: "The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.*, *supra*, 2 Cal.App.4th at p. 547.) Under the facts of this case, and especially the evolving nature of the department's and the court's understanding of mother's special needs, substantial evidence supports the court's finding at disposition that mother was provided with reasonable services.

Mother also argues reasonable services were not provided because some visits needed to be made up. We disagree.

"In order to maintain ties between the parent … and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent …, any order placing a child in foster care, and ordering reunification services, shall provide … [¶] … for visitation between the parent … and the child." (§ 362.1, subd. (a)(1)(A).) Visitation "shall be as frequent as possible, consistent with the well-being of the child," but "[n]o visitation order shall jeopardize the safety of the child." (§ 362.1, subd. (a)(1)(A)–(B).) " 'Visitation is a critical component, probably the most critical component, of a reunification plan.' " (*In re T.G.* (2010) 188 Cal.App.4th 687, 696–697.)

We find mother was provided reasonable services as to visitation. The evidence before the juvenile court was that mother and husband were provided visits with the children from the inception of the case. Initially, some visits were delayed due to caregiver scheduling and transportation issues. Once that was resolved at the end of September 2023, husband's behavior towards O.I. at visits jeopardized the child's safety, which necessitated separating the children's visits and not allowing husband to visit with

14.

O.I.  This caused a disruption in mother's visits with the children, which was eventually resolved, but did leave mother with some visitation hours owed.  Some of the visitation hours missed were due to mother and husband not showing up for the visit (week of February 18–24, 2024); cancelling without informing the department (week of March 17–23, 2024); or cancelling due to illness (June 3, 2024).  The department was in the process of making up the missed visits.

## DISPOSITION

The order of the juvenile court bypassing services to mother and setting the section 366.26 hearing is affirmed, and the petition for extraordinary writ is denied.  This court's opinion is final forthwith as to this court pursuant to California Rules of Court, rule 8.490(b)(2)(A).